# EXHIBIT B

# INCIDENT/INVESTIGATION REPORT

**INCIDENT DATA**

| Agency Name | | Case# |
|---|---|---|
| *Charleston Police Department* | | *24-03740* |

ORI: *SC0100100*

Date / Time Reported: *03/09/2024  10:49  Sat*
Last Known Secure: *03/09/2024  09:24  Sat*

| Location of Incident | Gang Relat | Premise Type | Beat/Tract | At Found |
|---|---|---|---|---|
| *301 SAVANNAH HWY, Charleston SC 29407* | NO | *Parking Lot/parking* | 425 | *03/09/2024  10:13  Sat* |

| #1 | Crime Incident(s) | (Com) | Weapon / Tools | | | Activity |
|---|---|---|---|---|---|---|
| | *Death Investigation 947* | | | | | |
| | | | Entry | Exit | Security | |

| #2 | Crime Incident | ( ) | Weapon / Tools | | | Activity |
|---|---|---|---|---|---|---|
| | | | Entry | Exit | Security | |

| #3 | Crime Incident | ( ) | Weapon / Tools | | | Activity |
|---|---|---|---|---|---|---|
| | | | Entry | Exit | Security | |

**MO**

**VICTIM**

# of Victims: *1*   Type: INDIVIDUAL/ NOT LAW   Injury:

| V1 | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | *BARNETT, JOHN M* | *1,* | Age *62* | *W* | *M* | | | |

| Home Address | Home Phone |
|---|---|
| ▓, Pineville LA 71630- | - - |

| Employer Name/Address | Business Phone | Mobile Phone |
|---|---|---|
| | - | |

| VYR | Make | Model | Style | Color | Li | | VIN |
|---|---|---|---|---|---|---|---|
| *2015* | *DODG* | *RAM* | *PK* | *ONG* | ▓ | *LA* | ▓ |

**OTHERS INVOLVED**

CODES:   V- Victim (Denote V2, V3)   O = Owner (if other than victim)   R = Reporting Person (if other than victim)

Type: INDIVIDUAL/ NOT LAW ENFORCEMENT   Injury:

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| *CO* | ▓ | | Age *42* | *B* | *M* | | | |

| Home Address | Home Phone |
|---|---|
| ▓ | ▓ |

| Employer Name/Address | Business Phone | Mobile Phone |
|---|---|---|
| | | |

Type: INDIVIDUAL/ NOT LAW ENFORCEMENT   Injury:

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| *OT* | ▓ | | Age *36* | *W* | *F* | | | |

| Home Address | Home Phone |
|---|---|
| ▓ | ▓ |

| Employer Name/Address | Business Phone | Mobile Phone |
|---|---|---|
| *Holiday Inn 301 SAVANNAH HWY (GENERAL MANAGER)* | *843-556-7100* | |

**PROPERTY**

1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | 13 | 6 | $600.00 | | 1 | *FIREARMS* | *9/S&W/3913* | ▓ |
| *1* | 12 | *EVID* | $0.00 | | 1 | *2015 ONG ,* ▓ *LA* | *DODG Ram* | ▓ |

| Officer/ID# | *WARD, T. N. (PTL, TM4P) (2834)* | |
|---|---|---|
| Invest ID# | *MALONE, D. R. (IDI, VCU) (2237)* | Supervisor: *FEETERS, R. J. (PTL, TM4P) (1423)* |

| Status | Complainant Signature | Case Status | | Case Disposition: | Page 1 |
|---|---|---|---|---|---|
| | | *Pending Active* | *03/09/2024* | | |

# Incident Report Additional Name List

*Charleston Police Department*

OCA: *24-03740*

## Additional Name List

| | Name Code/# | Name (Last, First, Middle) | Victim of Crime # | DOB | Age | Race | Sex |
|---|---|---|---|---|---|---|---|
| **1 )** | *OT    2* | *POCKLINGTON, AMY M* | | ▮ | *52* | *W* | *F* |
| | Address | , | **H:** - - | | | | |
| | Empl/Addr | *Ogletree Deakins, Ogletree.com/people/*▮ | **B:** - - | | | | |
| | | | **Mobile #:** ▮ | | | | |
| **2 )** | *OT    3* | ▮ | | ▮ | *63* | *W* | *F* |
| | Address | ▮ | **H:** ▮ | | | | |
| | Empl/Addr | | **B:** - - | | | | |
| | | | **Mobile #:** - - | | | | |
| **3 )** | *OT    4* | *TURKEWIZ, ROBERT* | | ▮ | *64* | *W* | *M* |
| | Address | *768 SAINT ANDREWS BLVD , CHARLESTON, SC 29407-* | **H:** ▮ | | | | |
| | Empl/Addr | | **B:** - - | | | | |
| | | | **Mobile #:** - - | | | | |
| **4 )** | *OT    5* | ▮ | | ▮ | *32* | *B* | *M* |
| | Address | ▮ | **H:** ▮ | | | | |
| | Empl/Addr | *Holiday Inn, 301 Savannah Hwy* | **B:** - - | | | | |
| | | | **Mobile #:** - - | | | | |
| **5 )** | *OT    6* | ▮ | | ▮ | *28* | *B* | *M* |
| | Address | ▮ | **H:** ▮ | | | | |
| | Empl/Addr | | **B:** - - | | | | |
| | | | **Mobile #:** - - | | | | |

# INCIDENT/INVESTIGATION REPORT

*Charleston Police Department*

Case # *24-03740*

| Status Codes | 1 = None | 2 = Burned | 3 = Counterfeit / Forged | 4 = Damaged / Vandalized | 5 = Recovered | 6 = Seized | 7 = Stolen | 8 = Unknown |

| | IBR | Status | Quantity | Type Measure | Suspected Type | |
|---|---|---|---|---|---|---|
| D R U G S | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers

Suspect Hate / Bias Motivated:

# INCIDENT/INVESTIGATION REPORT

Narr. (cont.)  OCA: 24-03740

*Charleston Police Department*

N A R R A T I V E

    On 03/09/2024 at approximately 1017 hours, Officer Ward responded to 301 Savannah Highway (Holiday Inn), located in the City of Charleston, in reference to a welfare check.

    Officers on scene located an unresponsive male in a vehicle in the aforementioned parking lot. The victim was pronounced deceased by Seth Croutcher (Delta3) at 1033 hours. CPD Central, Crime Scene, and the Coroner were advised and responded to the scene. This incident was recorded on Officer`s CPD issued BWC.

    The investigation is ongoing.

## Incident Report Related Vehicle List

*Charleston Police Department*

OCA: *24-03740*

| 1 | VehYr/Make/Model *2015 DODG, Ram* | | Style *PK* | Color *ONG* | Lic/Lis ▓▓▓ *LA 2024, 2024* | VIN ▓▓▓▓ |
|---|---|---|---|---|---|---|
| | IBR Status *Evidence (non Scibr)* | | Date *03/09/2024* | Location *301 SAVANNAH HWY, CHARLESTON SC* | | |

| Condition | Value *$0.00* | Offense Code *980* | Jurisdiction *Locally* | State # | NIC # |
|---|---|---|---|---|---|

| Name (Last, First, Middle) *Barnett, John M* | Also Known As | Home Address ▓▓▓▓ *PINEVILLE, LA 71630* |
|---|---|---|
| Business Address | | |

| DOB ▓▓▓ | Age *62* | Race *W* | Sex *M* | Hgt *511* | Wgt *215* | Scars, Marks, Tattoos, or other distinguishing features |
|---|---|---|---|---|---|---|

Notes

**Incident Report Related Property List**

*Charleston Police Department*

OCA: *24-03740*

| 1 | Property Description | | Make | Model | Caliber |
|---|---|---|---|---|---|
| | **FIREARMS** | | **S&W** | **3913** | **9** |

| Color | Serial No. | | Value | Qty | Unit | Jurisdiction |
|---|---|---|---|---|---|---|
| **Silver Or** | ███████ | | **$600.00** | **1.000** | | **Locally** |

| Status | Date | NIC # | State # | Local # | OAN |
|---|---|---|---|---|---|
| **Seized** | **03/09/2024** | **G826212751** | | | |

| Name (Last, First, Middle) | | DOB | Age | Race | Sex |
|---|---|---|---|---|---|
| **\* No name \*** | | | | | |

Notes

**CASE SUPPLEMENTAL REPORT**    Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*    **Case Mng Status:** *PENDING ACTIVE*    **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *WARD, T. N. (2834)*    **Date / Time:** *03/09/2024 11:28:53, Saturday*

**Supervisor:** *FEETERS, R. J. (1423)*    **Supervisor Review Date / Time:** *03/09/2024 15:00:56, Saturday*

**Contact:**    **Reference:** *Crime Scene Log*

OCA#: 24-03740
Incident Type: Suicide
Incident Location: 301 Savannah Highway
Victim: John M. Barnett

Crime Scene Log:

Personnel from Tower105:
James Wujcik
Eran McClary
Alex Wagers
Connor O`Rouke

Sgt. Feeters
CST Holly Bennett
Coroner Ella Butler
Seth Croutcher (Delta3)

Personnel from Rescue604:
Chief Mario Middleton
Chief Taylor Johnson
Brett Rahalewicz

Sgt. Brown
Det. Delucia

Investigator Signature    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**    Printed: 05/13/2024  09:42

*Charleston Police Department*    OCA: **2403740**

<mark>THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY</mark>

| | | |
|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | | |
|---|---|---|
| **Investigator:** *WARD, T. N. (2834)* | **Date / Time:** *03/09/2024 11:33:05, Saturday* |
| **Supervisor:** *FEETERS, R. J. (1423)* | **Supervisor Review Date / Time:** *03/09/2024 16:40:40, Saturday* |
| **Contact:** | **Reference:** *Supplemental Report* |

---

OCA#: 24-03740
Incident Type: Suicide
Incident Location: 301 Savannah Highway
Victim: John M. Barnett

On 03/09/2024 at approximately 1017 hours, Officer Ward responded to 301 Savannah Highway (Holiday Inn), located in the City of Charleston, in reference to a welfare check. Officer Ward arrived on scene and made contact with a hotel employee, ▮▮▮▮▮▮▮▮ (Complainant), who advised there was a male in a "Clemson orange" Dodge Ram pickup truck with a firearm in his hand.

Sgt. Feeters, Officer Ward, and Officer Drayton cautiously approached the vehicle and attempted to make contact with the male party. It should be noted that there was no active stimulus in the vehicle. While visually clearing the vehicle Officers observed a white male in the driver`s seat with what appeared to be a silver handgun in his right hand resting on his lap, and his right pointer finger still remaining on the trigger. The male had what appeared to be a gunshot wound near his right temple, and showed no signs of life. Laying in plain view on the passenger seat was a white piece of paper that closely resembled a note.

CFD Tower105 was requested to assist in opening the passenger side door by utilizing a slim-jim device. Once access was gained into the vehicle, the aforementioned silver handgun was removed from the male`s hand for safety reasons. Shortly after, Medic 03 pronounced the victim deceased at approximately 1033 hours. It should be noted that a DMV search of the vehicle (LA Tag ▮▮▮▮▮▮) yielded a registration return to a John M. Barnett (Victim).

Furthermore, Officer Ward spoke with the general manager, ▮▮▮▮▮▮▮▮ (Other), who advised the following:
On 03/02/2024, a guest by the name of John Barnett checked into Room 511, with the expected departure date of 03/06/2024. On 03/06/2024, Barnett extended his stay to 03/08/2024, and was expected to check out that morning. Surveillance video of Barnett exiting the hotel on the morning of 03/08/2024 is available upon request. It should be noted that the address provided on the guest paperwork from ▮▮▮▮▮ was ▮▮▮▮▮▮▮▮▮

▮▮▮▮ stated the hotel received a phone call from a "Rob" ▮▮▮▮▮▮▮▮), stating that he was a friend of Barnett`s, at approximately 1000 hours requesting a welfare check on his coworker John Barnett. "Rob" provided a description of the victim and his vehicle, which led employees to the aforementioned Dodge Ram in the parking lot.

Officer Ward spoke further with ▮▮▮▮▮, who advised the following:
▮▮▮▮▮ was advised by ▮▮▮▮ to check the victim`s room (511) before checking outside for his vehicle. ▮▮▮▮▮ along with a few additional employees, knocked on the victim`s door but did not get a response. This led ▮▮▮▮▮ to the parking lot, where he eventually found the victim in his vehicle. It should be noted that ▮▮▮▮ stated he

---

Investigator Signature _____    Supervisor Signature _____

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*    **Case Mng Status:** *PENDING ACTIVE*    **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *WARD, T. N. (2834)*    **Date / Time:** *03/09/2024 11:33:05, Saturday*

**Supervisor:** *FEETERS, R. J. (1423)*    **Supervisor Review Date / Time:** *03/09/2024 16:40:40, Saturday*

**Contact:**    **Reference:** *Supplemental Report*

---

heard a "pop" sound near the vehicle at approximately 0924 hours when he was working on the exterior of the hotel, but he did not think anything of it at the time.

An SCDMV search of John Barnett yielded a return for a white male matching the description of the victim. Officer Ward ran the above name and date of birth provided by the SCDMV search through NCIC and discovered a "John M. Barnett" (Louisiana DL# ▮▮▮▮▮▮ residing at the address previously provided by ▮▮▮▮ Officer Ward was able to match these search results with the victim`s Louisiana DL that was found by CPD Central in his hotel room. The Coroner confirmed the victim`s identity with the same Louisiana DL.

CPD Central Sgt. Brown and Det. Delucia, Crime Scene, and the Coroner were all advised and responded to the scene, taking over the investigation. Officer Ward stood by and secured the crime scene. This incident was recorded on Officer`s CPD issued BWC.

---

Investigator Signature                                    Supervisor Signature

Page 8

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | |
|---|---|
| **Investigator:** *BROWN, Y. D. (1191)* | **Date / Time:** *03/09/2024 15:49:08, Saturday* |
| **Supervisor:** *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** *03/12/2024 18:32:33, Tuesday* |
| **Contact:** | **Reference:** *Supplemental Report* |

Incident #: 24-03740
Incident Type: Death Investigation/Suicide
Incident Dater/Time: 3/9/2024 @ 1015hrs
Incident Location: 301 Savannah Hwy. Charleston, SC
Victim: John Barnett (W/M; DOB: ⬛⬛⬛⬛⬛⬛)

On 3/9/2024 at approximately 1025hrs I, (Sgt. Y. Brown) was contacted by Sgt. R. Feeters in reference to a suicide that had occurred sometime prior. Sgt. Feeters advised that upon the arrival of responding officers they observed the victim located in the driver seat of a orange Dodge Ram pickup truck bearing Louisiana tags ⬛⬛⬛⬛. Sgt. Feeters advised that the truck doors were locked and the responding Fire Department had to assist with entry. He noted that they had to strategically remove the firearm from the hand of the victim as it appeared he had his index finger still on the trigger.

Upon my arrival I observed a orange Dodge Ram backed into the parking spot located to the very rear of the hotel. The victim was observed with what appeared to be a small entry hole from a projectile surrounded by blood on the right side (temple area) of the victim`s head (his head was slightly shifted towards the right shoulder). The victim was located in the driver`s seat of the truck wearing a red, white and dark colored plaid sleeveless shirt that was mostly unbuttoned and open with his chest and stomach area exposed, dark jeans, no shoes (dark canvas material shoes were located on the floor of the driver`s side).

It should be noted that a gray colored Smith and Wesson 9mm hand gun (bearing SN:⬛⬛⬛⬛⬛; Model 3913) was located on the center arm rest with the magazine removed along with a single unfired bullet (CPD CSO advised 5 live rounds in the magazine). In addition I observed a small journal type book (red leather covering) placed on top of black leather jacket on the front passenger seat. The journal book was in the open position and from the outside of the truck you could read what appeared to a be a note/writing presumably done by the victim. A page read " I pray the motherfuckers that destroyed my life pay!!! I pray Boeing Pays!!! Bury me face down so Boeing and their lying ass leaders can kiss my ass To My Family and Friends, I Found My Purposes! I`m at Peace! I Love You More John I Mitch Barnett AKA Swampy Funcle Mitch" P.S. The Entire System For Whistlblower is Fucked up Too (a portion of this line was scratched through but still legible). On the other open page I observed the following writings " I Can`t Do This Any Longer!!! Enough!! Fuck Boeing!Trump 2024 Whislblowers Protection is Fucked Up Too!! America Come Together or Die!! And I wasn`t Stoned when I wrote This... Really! Family and Friends I Love You All. It should be noted that the above notation of writings is not documented in a sequence of order as the writings were all over the pages.

CPD Crime Scene Holly Saunders along with Deputy Coroner Ella Butler arrived on scene to for further process and take photos. Deputy Coroner Butler assumed the custody of the victim`s body. She further advised that she will make us aware of when the autopsy would be conducted.

_____          _____
Investigator Signature                              Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | |
|---|---|
| **Investigator:** *BROWN, Y. D. (1191)* | **Date / Time:** *03/09/2024 15:49:08, Saturday* |
| **Supervisor:** *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** *03/12/2024 18:32:33, Tuesday* |
| **Contact:** | **Reference:** *Supplemental Report* |

Additionally, it was learned from Holiday Inn General Manger, ███████████ that a call came into the hotel from a subject named Rob (Telephone #: ███████████) requesting a welfare check on the victim. She noted that a check of victim`s room was done and the subject wasn`t observed inside. ███████ stated that Rob called a 2nd time requesting for staff to check the parking lot for a "Clemson orange" colored pickup truck (See Additional Supplementals) and this was when the victim was located.

Nothing Further...

| | |
|---|---|
| Investigator Signature | Supervisor Signature |

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*                                    OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*        **Case Mng Status:** *PENDING ACTIVE*        **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *BROWN, Y. D. (1191)*        **Date / Time:** *03/09/2024 17:36:27, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*        **Supervisor Review Date / Time:** *03/21/2024 16:03:22, Thursday*

**Contact:**                                **Reference:** *Supplemental Report*

---

Incident #: 24-03740
Incident Type: Death Investigation/Suicide

Interviewee: Robert Turkewiz (W/M; DOB: ████ 1959; Law office located at 768 St. Andrews Blvd)

While on scene I, Sgt. Y. Brown made contact with Mr. Robert Turkewiz via telephone after being advised by Holiday Inn General Manger, ████████ that a welfare check was requested by a subject who called the hotel named "Rob". She provided me with Rob`s contact number ████████). The interview with Mr. Turkewiz was recorded via my CPD issued body worn camera and can be summarized as the following:

I questioned if he was the subject that contacted the Holiday Inn regarding a check on the victim, John Barnett. Robert stated that he did contact the hotel and requested a check be done on his client/victim after he did not answer any of his calls (1st call to the victim was at 0907hrs with no response). He advised that he is representing the victim. Robert stated that he was currently at his law office along with 4 other attorney`s awaiting the victim`s arrival. He questioned multiple times about the victim`s status (was he alive, deceased or arrested, etc.). I stated to him that I would have to call him back to advise of information regarding his client before I secure for the day.

I questioned if his client was just visiting the area or was here on business and Robert advised that the victim was currently in the area on legal business. He continued to state the victim was a former Boeing employee and that he was visiting due to this weeks deposition and litigations that was taking place involving Boeing. He added that the victim was once employed by the local Boeing plant but is currently residing in Pineville, Louisiana. He stated that the victim has no family in the area but did have his mother and two brothers that resided in Louisiana (provided a possible brother name ████████ with an address of ████████████████; possible phone number: ████████). Robert stated that the victim moved away in 2018. He noted that the victim was supposed to meet for the 3rd and final day of litigations at 1000hrs on today`s date.

He stated that he first contacted the hotel at approximately 0953hrs to conduct a welfare check on the victim. He stated he called back to have them look for the victim`s truck. He stated that the hotel staff never called him back so he reached out to the hotel again and they advise EMS personnel were coming on scene to attend to the victim.

Robert was provided my name and contact information. This interview can be heard in its entirety.

Nothing Further.....

---

Investigator Signature                          Supervisor Signature

**CASE SUPPLEMENTAL REPORT**    Printed: 05/13/2024  09:42

*Charleston Police Department*    OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*    **Case Mng Status:** *PENDING ACTIVE*    **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *FEETERS, R. J. (1423)*    **Date / Time:** *03/10/2024 10:56:13, Sunday*

**Supervisor:** *FEETERS, R. J. (1423)*    **Supervisor Review Date / Time:** *03/10/2024 11:19:42, Sunday*

**Contact:**    **Reference:** *Supplemental Report*

---

Supplement- 24-03740
Incident - Suicide
Location- 301 Savananah Hwy
Date- 3/9/24
Victim- John Barnett

On 9 March 2024 at 1013 hrs, I (Sgt. Feeters) responded to the parking lot of 301 Savannah Hwy in reference to suspicious person call. Prior to arrival a witness/employee advised he observed a male sitting in an orange pick up truck at the rear of the hotel holding a gun in his lap.

I arrived a short time later and was directed towards an orange Dodge Ram pickup truck bearing LA tag- . I along with officers Drayton and Ward visually scanned the interior of the vehicle from outside.

I observed a white male seated in the drivers seat holding a silver hand gun in his right hand. His head was tilted upwards and what appeared to be a GSW was observed about his side of his head. I detected no movement in his chest and summoned EMS and FD to assist. Due to all the door being locked I requested the FD to open the drivers side door via a slim jim device.

Once inside the vehicle, for safety reasons I removed the handgun from his right hand due to his finger still being on the trigger. I moved said handgun to the center console allowing EMS to check his status, after which point he was pronounced deceased.

I when instructed Ofc. Drayton to secure the scene while Ofc. Ward began the field investigation. Central and CS were requested and responded.

---

Investigator Signature                         Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*    **Case Mng Status:** *PENDING ACTIVE*    **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *BENNETT, H. R. (2442)*    **Date / Time:** *03/10/2024 15:18:16, Sunday*

**Supervisor:** *SPRATT, L. F. (2311)*    **Supervisor Review Date / Time:** *03/12/2024 15:34:55, Tuesday*

**Contact:**    **Reference:** *Crime Scene Log*

---

Crime Scene Supplemental Report

Case Number:  2403740
Date/Time of Response:    March 9, 2024/1106 hours
Location of Response:  301 Savannah Hwy.
Reporting CST:    H. Bennett
Evidence Collected:    Yes (4)
Evidence sent to Latent Recovery:  No
Photos taken:    Yes
Video taken:    No
Fingerprint processing at scene:    No
Number of latent lifts:  0
Weather:    Light rain to overcast, Strong winds

On March 9, 2024, at approximately 1106 hours, reporting Crime Scene Investigator (R/CSI) responded to 301 Savannah Hwy (Holiday Inn), in the City of Charleston, in reference to a death investigation and met with Sergeants Feeters and Y. Brown, Detective Delucia, Officer Ward, and Charleston County Deputy Coroner E. Butler.

R/CSI was informed that a welfare check had been called in for a male party staying at the hotel. Housekeeping checked the room of the party and noted all of his belongings were still in the room. Officers then arrived on scene and located the male, unresponsive, in his vehicle, with what appeared to be a wound to his head. Fire and EMS were called to the scene to check the status of the individual. Sgt. Feeters noted a firearm in the individual`s right hand, removed it, and placed it on the center console so EMS could check on the victim. EMS pronounced the victim deceased.

R/CSI photographed the scene for documentation. R/CSI noted that the victim`s vehicle, an orange Dodge Ram 1500 (tag: (LA ▬▬▬▬▬ ), was backed into the last parking spot along the west side of the hotel. Due to heavy rain all morning, the parking lot in front of and around the vehicle had standing water. The decedent, John Barnett (DOB: ▬▬▬▬▬ , W/M), was seated in the driver`s seat of the vehicle. His shoes were off and placed on the driver`s floorboard. His feet were bare and resting by the brake pedal. He was wearing blue jeans and a sleeveless red, plaid button-up shirt. The shirt was unbuttoned, which appeared to be due to EMS since there was a small ECG electrode sticker at the base of the stomach, as well as both upper arms. R/CSI noted a large tattoo on the left pectoral of an alligator. The decedent`s left arm was bent at the elbow and resting on his thigh. The hand was in a loose fist. The right arm was mostly straight out alongside his body and the fingers were curled, with the thumb sticking out. The head was back, against the headrest, and tilted to the right. The eyes were closed, and the mouth was open. On the right side of the head, at the temple, R/CSI noted a wound with apparent blood dripping from it onto the seat and floor below.

Investigator Signature                    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 03/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | | |
|---|---|---|---|
| **Case Status:** | *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** | *DEATH INVESTIGATION* | | |

| | | |
|---|---|---|
| **Investigator:** | *BENNETT, H. R. (2442)* | **Date / Time:** *03/10/2024 15:18:16, Sunday* |
| **Supervisor:** | *SPRATT, L. F. (2311)* | **Supervisor Review Date / Time:** *03/12/2024 15:34:55, Tuesday* |
| **Contact:** | | **Reference:** *Crime Scene Log* |

On the center console, where it had been moved, was a Smith and Wesson model 3913 9mm handgun [S/N: ▉▉▉▉▉▉, NIC #: G826212751] (item 101). R/CSI rendered the firearm safe by removing the magazine and locking back the slide. R/CSI noted that the magazine had approximately five rounds in the eight-capacity magazine, and one round in the chamber. Also visible on the firearm was blood and hair at the end of the barrel. R/CSI photographed it for documentation. In the front passenger seat was a notebook. It was open to a page with several things written on it like "I found my purpose! I`m at peace!" and "I can`t do this any longer!!!" R/CSI photographed the note for documentation, which was collected by CCDC Butler.

CCDC Butler, along with R/CSI, began to search the vehicle. R/CSI photographed items located including two pill bottles with plant-like material. One pill bottle was located inside a Crown Royal bag found on the front passenger floorboard (item 102) and the other was located in the cup holder area of the center console (item 103). R/CSI collected the pill bottles of plant-like material. Det. Delucia advised they could be entered into evidence to be destroyed.

R/CSI then located a single-fired cartridge casing (FCC) in the vehicle`s backseat. It was on a jacket that was lying on the floorboard just behind the center console. R/CSI documented the FCC, a WIN 9mm luger (item 104), and collected it as evidence.

At approximately 1210 hours, County Rescue 604 arrived on scene to help remove the decedent from the vehicle. Once he was removed, R/CSI and CCDC Butler examined him in the back of the rescue van. R/CSI documented the wound to the right temple with a scale. The wound was approximately one inch in length. R/CSI also noted a small area of stippling around the wound, which is consistent with an entrance wound with close contact. R/CSI located similar stippling on the decedent`s right hand. CCDC Butler searched the decedent`s pockets and located his car keys in the front, right pocket, but nothing else. CCDC Butler collected the car keys. The decedent was then rolled over and his back was examined. An exit wound was located at the back of the head. R/CSI photographed the exit wound with and without scale. The exit wound was approximately half an inch long. No other trauma or injuries were observed at the time. The decedent was secured in the body bag (tag # 0005227) and transported to the Coroner`s Office.

R/CSI then photographed the vehicle where the decedent had been sitting. R/CSI noted some red staining on the seat. Above the seat, in the roof lining, was a small hole. R/CSI photographed the hole for documentation. R/CSI looked and felt in and around the hole for any sign of a projectile, but nothing was located. R/CSI then looked on the exterior of the roof of the vehcile to see if it had potentially passed through the roof, but there was no hole indicating that it had. R/CSI then looked around the drivers area again, but no projectile was located.

R/CSI, along with Det. Delucia then went to room 511 where the decedent had been staying. R/CSI photographed the room for documentation. R/CSI noted that the decedent`s belongings were still laid out in the bathroom and

---

| Investigator Signature | Supervisor Signature |
|---|---|

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*    **Case Mng Status:** *PENDING ACTIVE*    **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *BENNETT, H. R. (2442)*    **Date / Time:** *03/10/2024 15:18:16, Sunday*

**Supervisor:** *SPRATT, L. F. (2311)*    **Supervisor Review Date / Time:** *03/12/2024 15:34:55, Tuesday*

**Contact:**    **Reference:** *Crime Scene Log*

---

the room, including clothing and a laptop with several USB drives. On the dresser in the room, the decedent`s wallet was located. R/CSI photographed it for documentation. Det. Delucia collected it and transferred it to CCDC Butler. A search of the room was done, but nothing of interest was located. Det. Delucia collected the laptop and USBs as evidence since the decedent`s cell phone could not be located. R/CSI and Det. Delucia secured the hotel room before leaving.

Nothing further was requested of crime scene.

No further information at this time.

_____

EVIDENCE SUMMARY

| Item # | Description | (sent to) |
|---|---|---|
| 101 | Smith & Wesson model 3913 9mm handgun | (evidence) |
| | (S/N: ▮▮▮▮▮, NIC #: G826212751) | |
| 102 | pill bottle with plant material | (evidence) |
| 103 | pill bottle with loose plant material | (evidence) |
| 104 | FCC: WIN 9mm luger | (evidence) |

END/ HB

---

Investigator Signature                    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | | |
|---|---|---|
| **Investigator:** *DELUCIA, J. R. (2495)* | **Date / Time:** *03/10/2024 18:35:46, Sunday* | |
| **Supervisor:** *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** *03/18/2024 16:32:34, Monday* | |
| **Contact:** | **Reference:** *Supplemental Report* | |

OCA: 24-03740
Incident Date: 03/09/2024
Incident: Suicide
Incident Location: 301 Savannah Hwy. Charleston, SC, 29407
Victim: John Barnett

03/09/2024
-Responded to the incident location.
-Responded to Jennings Towing.

On 03/09/2024 Sgt. Feeters contacted central detectives in reference to a deceased at the above address. Sgt. Brown and I (assigned dayshift response detectives) responded to the incident location. I arrived at approximately 1040 hours and upon arrival I met with Sgt. Feeters and was briefed on the circumstances of the incident. His brief included the location of the victim & his vehicle as well as the location of the employee complainant (later determined to be listed other - ▮▮▮▮ inside the hotel. This individual was the person who located the deceased victim inside his vehicle with a gun held in his hand.

I then followed up inside the Holiday Inn and met with the manager ▮▮▮▮▮▮▮▮) and conducted an interview with her therein. The interview was recorded on my CPD issued BWC and can be summarized as follows:
**********
Interviewee:
Name: ▮▮▮▮▮▮
DOB: ▮▮▮▮▮▮▮
Address: ▮▮▮▮▮▮▮▮
Phone: ▮▮▮▮

▮▮▮▮ confirmed that the victim was a guest at the hotel.
-She advised that when she got in today (at about 9:40-9:45), she received a phone call from an individual named Rob (unknown phone number at this time).
-When she arrived at work, she parked near where the victim`s truck was located. She advised that she didn`t see anything of note at that point. Additionally, she couldn`t recall if the victim`s vehicle was already there.
-I asked about the phone conversation she had regarding Rob, and she advised that Rob expressed that he`s concerned about Mr. Barnett (victim), he`s in room 511, is supposed to be attending a conference this morning, and has not shown up/he can`t reach the victim. ▮▮▮▮ believes that Rob called at about 10:00.
-▮ sent staff up to the room (511) and afterwards called Rob back telling him that there was no one in the room & the room was intact/fine. She believes that she called Rob back within 10 minutes.
-Rob then told ▮▮▮▮ that the victim drives a Clemson Orange truck that can`t be missed and asked her to

| | |
|---|---|
| Investigator Signature | Supervisor Signature |

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | | |
|---|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | | |

| | | |
|---|---|---|
| **Investigator:** DELUCIA, J. R. (2495) | **Date / Time:** *03/10/2024 18:35:46, Sunday* | |
| **Supervisor:** TUTTLE, E. M. (1604) | **Supervisor Review Date / Time:** *03/18/2024 16:32:34, Monday* | |
| **Contact:** | **Reference:** *Supplemental Report* | |

check if he's in the parking lot.

- At about 10:13 ▇▇▇ went out the door, observed the truck, looked inside and stepped back. Additionally, she advised that another employee "Marvin" went outside with her.

-I asked ▇▇▇ what she saw, and she said that she saw his "open chest" (victim's shirt was open), his head slumped over (to the left, shown rather than explained), and she saw him holding the gun (described as gray & black with a clip on the bottom). She advised what made her back up was seeing the individual holding the firearm.

*During the interview with ▇▇▇, another employee (▇▇▇▇▇▇) advised that the victim's attorney was on the phone and said that he had court this morning at 1000. She was asked to obtain a name and number and Sgt. Brown advised that we would reach out to the individual. The information later provided by ▇▇▇▇ was: ▇▇▇▇▇▇, Robert Turkeweitz. *

*The above is a summary, review the recording for additional information. *
*****

▇▇▇ located the individual she went outside with to perform the wellness check and he provided a statement. This interaction was recorded on my CPD issued BWC & can be summarized as follows:

*****

Interviewee #2:

Name: ▇▇▇▇▇▇
DOB: ▇
Address: ▇▇▇▇▇▇
Phone: ▇▇▇

-He advised that he went outside the hotel to go to the victim's vehicle with his manager ▇▇▇.
-I asked him what prompted them to go outside, and he said they received a call regarding a wellness check for a guest in room 511 (Mr. Barnett).
-He said that they checked the room & the restaurant, and the victim wasn't up there. He clarified that he did not respond to room 511, he checked the restaurant.
-He said that the caller for the wellness check called back and told staff that the victim is in an orange truck.
-When he located the orange truck, he walked from the "back end", saw the gun in the victim's hand and then backed off. He added that it looked like the victim's finger was still on the trigger.
-I asked if he saw the victim inside the truck moving and he said no.
-▇▇▇ described the gun as silver in color.
-I asked Marvin if he saw any signs of disturbance and he responded in the negative.
-Once he and ▇▇▇ returned inside, they called 9-11.
-I asked him if he knows the victim personally and he responded in the negative. He advised that he saw the

| Investigator Signature | Supervisor Signature |
|---|---|

CASE SUPPLEMENTAL REPORT

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | | |
|---|---|---|---|
| **Case Status:** | *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** | *DEATH INVESTIGATION* | | |

| | | |
|---|---|---|
| **Investigator:** | *DELUCIA, J. R. (2495)* | **Date / Time:** *03/10/2024 18:35:46, Sunday* |
| **Supervisor:** | *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** *03/18/2024 16:32:34, Monday* |
| **Contact:** | | **Reference:** *Supplemental Report* |

victim in the hotel but never talked to him at all.
█████ confirmed that the victim has been staying at the hotel and he responded in the affirmative.

*The above is a summary, review the recording for additional information. *
*********
█████ permitted me to review the business` surveillance system. The surveillance system was consistent with the real date but not the real time. Real time was noted as 11:06 AM, and the camera time was noted as 11:08:19 AM. As such the camera is approximately 2 minutes fast (to the minute).

While reviewing the video footage I spoke to an employee (█████, DOB: █████, █████, Address: █████). He advised that, at about 9:24 this morning he was in the "shop", texting his boss, he heard a pop, and that was it. He said that he noticed the time because that was around the time he was texting the GM. I asked him if he was able to determine what the pop was from, and he said no. He added that it was raining/there was a storm. He thought it was something from under the pool/on top of the pool deck. Both Davon & █████ confirmed that the shop is close to the incident location.

Also, while reviewing the video, █████ provided me with a list of the door unlocks/keycard scans for room 511. The times recorded are inconsistent as labeled. The real time listed labeled as "read from the lock on" (03/09/2024 11:29:51 AM) and the recorded time is labeled as "lock`s clock" (03/09/2024 12:22:22 PM). As such the lock clock is 52 minutes and 31 seconds fast.
These scans were provided to me via text message/photo (received on my CPD issued iPhone). The photo was downloaded to a disc and entered into CPD evidence.

The last time the victim`s card was swiped prior to hotel staff was (lock clock time) 03/08 8:28 PM. Therefore, the actual time was 03/08 at 7:36 PM.

I was unable to locate the victim in the video footage review at this time.

I then observed the deputy coroner`s (Ella) examination of the victim`s body inside the transport van and the following was noted:
*****
-Gunshot wound to the right side of his head (temple area). She advised that it looked like there was some blowout; his head had close contact or contact with the firearm.
-Severely swollen lymph nodes.
-Exit wound at the back of his head.
-The keys to the victim`s vehicle were located in his right front pocket.
-The deputy coroner made 3 attempts to identify the victim via his fingerprints but was ultimately unsuccessful.
*****

| Investigator Signature | Supervisor Signature |
|---|---|

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | | |
|---|---|---|
| **Investigator:** *DELUCIA, J. R. (2495)* | **Date / Time:** | *03/10/2024 18:35:46, Sunday* |
| **Supervisor:** *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** | *03/18/2024 16:32:34, Monday* |
| **Contact:** | **Reference:** | *Supplemental Report* |

At this time, the victim`s identity was unconfirmed (although highly likely to be John Barnett) and there was an investigative need to search the victim`s rented hotel room in an attempt to locate the victim`s wallet or cell phone.

CSI Bennett discovered a Holiday Inn room key inside the victim`s vehicle. I took the key to ▉▉▉▉▉, and she scanned the card into her system confirming that the keycard was registered to room 511. We requested to search the room and she obliged & a staff member escorted CSI Bennett and I to room 511.

Upon viewing the room, the following was observed:
*****
-There was a plaque outside the door depicting "511".
-The room was comfortably cool.
-The room appeared to have clutter.
-There were no signs of a struggle/disturbance.
-Garbage/refuse was located inside & next to the garbage can near the room adjoining door.
-The adjoining room door was locked.
-Toiletries were observed on the bathroom counter/sink basin area.
-Two pill contains were located both prescribed to John "Barnette" (Pantoprazole 40 mg tab & Duloxetine 60 mg cap).
-Garbage/refuse was located in the garbage can inside the bathroom as well.
-On the bench near the room adjoining door were bags and above that on a ledge was a dopp kit.
-The room appeared to have been occupied by one person & there was only a single bed.
-A phone charger was observed in an outlet plugged into a nightstand.
-Clothing was hung in the closet.
-Personal items were observed throughout the main living area of the room.
-On the dresser in front of the TV a black in color wallet was located.
-Inside the wallet was a Louisiana ID (Name: John M Barnett, DOB: ▉▉▉▉▉▉, Address: ▉▉▉▉▉▉ Pineville, LA, 71360, LADL #: ▉▉▉▉▉, Height 5`11", Weight 215). The photo observed in the driver`s license is consistent with the victim`s appearance.
-On a table near the bed/chair in the corner of the room a laptop, laptop charger, mouse, and a sandwich bag containing 5 flash drives were located.
*****
The laptop, laptop charger, mouse, sandwich bag containing 5 flash drives, and wallet were seized from the hotel room.

Based on the totality of the circumstances the victim was able to be identified as John M Barnett.

I contacted Lt. Krasowski and requested a field transfer of the victim`s wallet to the deputy coroner. He approved the transfer.

| | |
|---|---|
| Investigator Signature | Supervisor Signature |

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | | | | |
|---|---|---|---|---|---|
| **Case Status:** | *PENDING ACTIVE* | **Case Mng Status:** | *PENDING ACTIVE* | **Occurred:** | *03/09/2024* |
| **Offense:** | *DEATH INVESTIGATION* | | | | |

| | | | |
|---|---|---|---|
| **Investigator:** | *DELUCIA, J. R. (2495)* | **Date / Time:** | *03/10/2024 18:35:46, Sunday* |
| **Supervisor:** | *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** | *03/18/2024 16:32:34, Monday* |
| **Contact:** | | **Reference:** | *Supplemental Report* |

After searching the room, I met with the deputy coroner and provided her with the wallet. Additionally, she provided me with the keys of the victim`s vehicle. Due to the victim`s phone not being located in the hotel room it is likely that the phone is still inside his vehicle.

Of note: the wallet contained the victim`s LADL, several cards, a Red River Bank Account Identification slip (paper), and $39.00 USD.

Prior to leaving the incident location I requested that ▮▮▮▮ download the needed footage from their surveillance system (from approximately 1900 hours on 03/08 through 1015 hours on 03/09). She advised that she would contact me when the footage is complete.

At approximately 1630 hours I followed up at Jennings Towing (2026 Meeting Street Rd. Charleston, SC, 29403) in an effort to locate the victim`s phone. While wearing gloves, I searched the inside of the victim`s vehicle, and I located an android phone (in a red case / screen or screen protector had minor cracks) underneath a plastic foldable flap in the rear passenger compartment. Additionally, I located a nylon style holster and magazine (containing 8 rounds) on the front passenger seat. The phone, holster, and magazine were seized.

At approximately 1710 hours I received communication from ▮▮▮▮ advising that the surveillance footage download was complete, and the video was ready to be picked up at the hotel front desk.

All items I seized from the vehicle & hotel room were entered into CPD evidence.

My BWC footage was uploaded to the Getac Cloud.

Nothing further.

| | |
|---|---|
| Investigator Signature | Supervisor Signature |

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*      **Case Mng Status:** *PENDING ACTIVE*      **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *LANCASTER, H. D. (2687)*      **Date / Time:** *03/11/2024 06:18:33, Monday*

**Supervisor:** *TUTTLE, E. M. (1604)*      **Supervisor Review Date / Time:** *03/14/2024 16:25:16, Thursday*

**Contact:**      **Reference:** *Supplemental Report*

OCA: 24-03740
Incident Date: 03/09/2024
Incident: Suicide
Incident Location: 301 Savannah Hwy. Charleston, SC, 29407
Victim: John Barnett

-On 03/10/2024 I conducted a follow up at the Holiday Inn during my shift. I retrieved the security camera footage from the night shift clerk who was identified as ███████ (DOB: ███████ ). The footage was later downloaded to a thumb drive and uploaded to the case file.

-I conducted a brief interview with the night shift clerk ███████ . ███ stated that he works the front desk of the Holiday Inn from 2300-0900. He was working the night prior to John Barnett being discovered deceased in his vehicle. ███████ stated that he did not remember seeing John Barnett at any time during his shift and did not mention noticing anything unusual.

-I began reviewing the security footage from the Holiday Inn. On 03/08/2024 at 19:26, John Barnett can be observed entering through the front entrance and passing the front desk. He appears to be alone and is wearing the same clothing that he was discovered in by responding officers (Red sleeveless flannel and blue jeans). According to the Hotel staff maintaining room entry logs, the last time John Barnett`s key card was swiped to gain access to his room was at 19:28 on 03/08/2024 which is consistent with his entry to the hotel two minutes prior to this.

-I conducted an initial review of the other cameras, but noted that the victim`s vehicle is out of frame and not captured on any of the exterior security cameras.

The investigation continues….

Investigator Signature                    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*     **Case Mng Status:** *PENDING ACTIVE*     **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *FEETERS, R. J. (1423)*     **Date / Time:** *03/11/2024 11:33:51, Monday*

**Supervisor:** *TUTTLE, E. M. (1604)*     **Supervisor Review Date / Time:** *03/15/2024 10:06:29, Friday*

**Contact:**     **Reference:** *Supplemental Report*

---

Supplement- 24-03740
Incident - Death Investigation
Location- 301 Savananah Hwy
Date- 3/9/24
Victim- John Barnett

***This supplement adds additional information that was not on the original supplemental report, of note that I was wearing nitrile gloves when I removed the handgun from Mr. Barnett`s right hand. The title of the report should have been death investigation as the coroner makes the determination of cause and manner of death.***

On 9 March 2024 at 1013 hrs, I (Sgt. Feeters) responded to the parking lot of 301 Savannah Hwy (Holiday Inn) in reference to suspicious person call. Prior to arrival a witness/employee advised he observed a male sitting in an orange pick up truck at the rear of the hotel holding a gun on his lap.

I arrived a short time later and was directed towards an orange Dodge Ram pickup truck bearing LA tag- ████ parked and not running. I along with officers Drayton and Ward visually scanned the interior of the vehicle from outside.

Through closed windows, I observed a white male sitting in the drivers seat holding a silver hand gun on his lap, pointing toward the driver door. The handgun was gripped tightly in his right hand with his finger still on the trigger. The hammer on the handgun appeared to be cocked back. He did not appear conscious while his head was tilted upward. What appeared to be a GSW was observed about the right side of his head. I detected no movement in his chest and summoned EMS and FD to assist. Due to all the door being locked I requested the FD to open the drivers side door via a slim jim device.

Once inside the vehicle, for safety reasons I (wearing gloves) removed the handgun from his right hand due to his finger still being on the trigger. I moved said handgun to the center console allowing EMS to access him in a safe manner to check his status, after which point he was pronounced deceased.

I then instructed Ofc. Drayton to secure the scene while Ofc. Ward began the field investigation. Central and CS were requested, responded and were briefed.

---

Investigator Signature     Supervisor Signature

# CASE SUPPLEMENTAL REPORT

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*          **Case Mng Status:** *PENDING ACTIVE*          **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *BROWN, Y. D. (1191)*                                    **Date / Time:** *03/12/2024 14:22:09, Tuesday*

**Supervisor:** *TUTTLE, E. M. (1604)*          **Supervisor Review Date / Time:** *03/20/2024 10:35:04, Wednesday*

**Contact:**                                                   **Reference:** *Supplemental Report*

Incident #: 24-03740
Incident Type: Suicide
Incident Location: 301 Savannah Hwy. (Holiday Inn)
Incident Date: March 9, 2024

Interviewee: Attorney Robert Turkewiz (W/M; DOB: ███████ : Telephone #: ███████ ), Attorney Brian Knowles (Telephone #: ███████ ), Paralegal Marina Knowles

On March 9 , 2024 I, Sgt. Y. Brown along with Charleston County Coroner, Ella Butler meet with the above listed legal counsels in regarding their client/victim, Robert Barnett who was found deceased at the incident location (301 Savannah Hwy.). The brief meeting was to advise the attorneys of what occurred as did arrive at the scene during the process of the investigation. It was also to gain any information about Mr. Barnett that would be relevant to the investigation. The interview was recorded by my CPD issued Body Worn Camera and summarized as the following:

 It should be noted that Attorney Turkewiz was the person that contacted the Holiday Inn in regards to conducting a welfare check on the victim. Mr. Turkewiz also advised that they represented John Barnett in a whistleblower lawsuit against Boeing (started in 2017). He continued to state that Mr. Barnett had retired (previous job title was 1st Line Quality Manager) from Boeing under a term he called a "constructive termination" and they were in the middle of depositions (Mr. Barnett has been coming back and forth to Charleston for the past 3 weeks) and that the incident date was going to be the last day (scheduled for 1000hrs) for the final hearing. They noted that Mr. Barnett`s job with Boeing was to protect the safety of the air crafts and that he was very knowledgeable. They added that when Mr. Barnett was employed by Boeing he would find and report defects but faced retaliation from higher management.

Most of the interview was led by Coroner Ella Butler and she began by asking if Mr. Barnett had reached out them in 2017 for representation in which Attorney Turkewiz confirmed. He stated that Mr. Barnett filed an AIR-21 which he explained was an aviation statue for retaliation against employees for making complaints about safety issues. Attorney Turkewiz and Knowles explained that Mr. Barnett made very serious safety complainant against Boeing. They continued to explain that they were in the middle of  Discovery (formal process of exchanging information between parties about the witnesses and evidence that will presented at trial). He stated that this process was going to take place over a one month time frame. He stated Mr. Barnett was the first of twenty depositions. They stated that the depositions started on the previous Thursday with the opposing attorneys questioning Mr. Barnett for approximately 7-9 hours with breaks in between. They stated that on the day prior, Friday, March 8, 2024, Mr. Barnett was in a deposition that lasted approximately 4-5 hours. I questioned the time frame in which they ended on March 8, 2024 and they advised that it was approx. 1800hrs.

_____                              _____
Investigator Signature                                          Supervisor Signature

**CASE SUPPLEMENTAL REPORT**                    Printed: 05/13/2024  09:42

*Charleston Police Department*                                         OCA: **2403740**

<mark>THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY</mark>

| | | | |
|---|---|---|---|
| **Case Status:** | *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** | *DEATH INVESTIGATION* | | |

| | | |
|---|---|---|
| **Investigator:** | *BROWN, Y. D. (1191)* | **Date / Time:** *03/12/2024 14:22:09, Tuesday* |
| **Supervisor:** | *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** *03/20/2024 10:35:04, Wednesday* |
| **Contact:** | | **Reference:** *Supplemental Report* |

Mr. Turkewiz expressed that Mr. Barnett was under lots of stress and his doctor/Clinical Social Worker, Debra Still had diagnosed him with PTSD as a result of lawsuit and its proceedings. Mr. Turkewiz added that Mr. Barnett was seen by Dr. Still on the previous Monday (March 4, 2024) while in Charleston (the attorneys noted that the diagnosis of PTSD was in 2017). They stated that Mr. Barnett wanted to go back to Louisiana so he could get an increase of PTSD medication (unknown if he was also seeing a physician while in his home state; possibly a place called Freeman Clinic).

Coroner Butler questioned if there was something in particular that could have occurred on the previous date that was extremely hard or could have pushed Mr. Barnett to his limit and they stated Friday would have been easier than the deposition that occurred on the previous Thursday. Attorney Knowles expressed that Mr. Barnett appeared comfortable during the questioning timeframes (all of the hearings were recorded during the week).

Coroner Butler advised Mr. Knowles that she could not advise them of alot of information since they were not his next of kin when they began questioning if any foul play was involved. She continued to state that at the current time it did not appear that Mr. Barnett was hurt by anyone else. Coroner Butler continued to advised that her job is to asset the victim and that the incident possibly occurred within the past few hours (not confirmed).

I reiterated with Attorney Turkewicz from our previous conversation about his first attempt to reach the victim via telephone (#: ███████ ; email address of ████████████ ) approximately 0907hrs. Mr. Knowles added that he also attempted to reach the victim but the line would ring then go directly to voice mail. Mr. Turkewicz stated he began to worry when the victim did not answer his phone from his first call. They noted that it was unlike the victim to not answer their calls. I questioned about why would they get worried right at 0900hrs when the deposition wasn`t slated to start until 1000hrs. He simply stated that the victim was always cooperative and would have answered the phone knowing it was him.

They questioned about checking cameras to see if Mr. Barnett interacted with anyone because Mr. Barnett was going against a very powerful company and had very "damaging information" about the company which was revealed during this weeks hearing. He was advised that video footage would be viewed by Law Enforcement. They continued to ask about foul play and I advised that currently it did not appear to be based on the current view of the crime scene. Coroner Butler also advised that with time it would be something that could be ruled out but she could give a definite answer.

I questioned if Mr. Barnett mentioned anything this week about feeling low, having any extra stress, etc. Attorney Turkewicz stated on the previous day Mr. Barnett just stated he needed to increase his PTSD medication because he was stressed and wanted to return home so he could see his physician. They stated overall he was happy that this case was coming to an end. They did advise that Mr. Barnett suffered from hypertension and coronary pulmonary issues (they had his medical records). Attorney Knowles noted that on the day of the incident Mr. Barnett would

_____                              _____
Investigator Signature                                       Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | | |
|---|---|---|---|
| **Case Status:** | *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** | *DEATH INVESTIGATION* | | |

| | | |
|---|---|---|
| **Investigator:** | *BROWN, Y. D. (1191)* | **Date / Time:** *03/12/2024 14:22:09, Tuesday* |
| **Supervisor:** | *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** *03/20/2024 10:35:04, Wednesday* |
| **Contact:** | | **Reference:** *Supplemental Report* |

not have been under any added stress because the deposition on this day would have been more of him telling his story. It should be noted that trial for this case was scheduled for the end of June 2024. Attorney Turkewicz stated that he felt Mr. Barnett was feeling good about getting the opportunity to tell his side of the story. They stated that they were not aware of any threats being made to Mr. Barnett but it could have been and he did not make them aware of it. They noted that this case has received world wide coverage. They stated Mr. Barnett had a strong case it wasn`t a situation in which he was going to be jailed. The described Mr. Barnett as a brave person so if he was in fear for his life he would not have shown it.  Mr. Barnett did acknowledge that Boeing was a powerful company and that lots of people were angry about his coming forward with the claims.

The attorneys were questioned about having any knowledge of Mr. Barnett owning a firearm and they stated it was unknown. When questioned about having any thoughts that Mr. Barnett could have commited suicide when there was no phone response, the paralegal, Mrs./ Knowles stated she thought of it. The attorneys stated they did not believe Mr. Barnett was a heavy drinker and did not have any knowledge of drug usage. They advised that they have known Mr. Barnett for 7 years and he had become like a friend to them. They were advised about the investigation process from Law Enforcement and the Coroner Office.

Coroner Butler stated she would handle the family being notified about the victim`s status. Business cards were provided to everyone.

This interview was captured on my CPD issued BWC and can be viewed in its entirety.

Nothing Further

_____
Investigator Signature                    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*                                                    OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | |

---

| | |
|---|---|
| **Investigator:** *DELUCIA, J. R. (2495)* | **Date / Time:** *03/12/2024 16:24:56, Tuesday* |
| **Supervisor:** *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** *03/20/2024 10:23:44, Wednesday* |
| **Contact:** | **Reference:** *Supplemental Report* |

---

OCA: 24-03740
Incident Date: 03/09/2024
Incident: Suicide
Incident Location: 301 Savannah Hwy. Charleston, SC, 29407
Victim: John Barnett

*03/10/2024*
-Contacted the victim`s mother.

On 03/10/2024 at approximately 1047 hours I (Det. DeLucia) contacted the victim`s mother via phone. The phone number for the victim`s mother was provided by Deputy Coroner Ella ▮▮▮▮▮▮▮ . I conducted an interview with her which was recorded on my CPD issued recording device. The interview can be summarized as follows:
**********
Interviewee:
Name: ▮▮▮▮▮▮▮▮
DOB: ▮▮▮▮▮▮▮▮
Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮
Phone (Cell): ▮▮▮▮▮▮▮▮
Phone (Home): ▮▮▮▮▮▮▮▮

-She advised that the victim`s current address is ▮▮▮▮▮▮ . Pineville, LA, 71360.
-She said that he lived in Charleston, but he moved about 4-5 years ago.
-She advised that the victim was only in Charleston giving depositions to Boeing.
-She said that he was in Charleston for a week with his attorneys giving depositions and then there was the "flight thing" where the door blew out & the oxygen tanks that didn`t come down and open. She said that this is what the victim had reported 7 years ago, and they never did anything about it so he had to come back for depositions.
-She said that the last time that she spoke to the victim he couldn`t wait to get back home.
-▮▮▮▮▮ said that she talked to the victim last Monday about four times.
-▮▮▮▮▮ also said that she got a text from the victim on Friday afternoon. She said that he wanted her to send him his medication. She sent the medication to his lawyer`s office on Wednesday, she texted and asked him if he had gotten it Wednesday. The victim texted her back Friday after lunch responding in the affirmative.
-I asked her when the victim came to Charleston, and she said that it was the weekend before last and the victim had been here for two weeks.
-I asked if the seemed fine when she spoke to him and she responded in the affirmative. She added that he was just ready to come home.
-The victim told ▮▮▮▮ that he will be home Sunday. She said that the victim was supposed to give the deposition yesterday morning and he was going to leave after that.
-▮▮▮▮▮ said that the victim usually drives, gets tired, spends a night, and then comes home. She added that

---

Investigator Signature                                           Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | | |
|---|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | | |

| | |
|---|---|
| **Investigator:** *DELUCIA, J. R. (2495)* | **Date / Time:** *03/12/2024 16:24:56, Tuesday* |
| **Supervisor:** *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** *03/20/2024 10:23:44, Wednesday* |
| **Contact:** | **Reference:** *Supplemental Report* |

sometimes he will try to drive the whole way.

-I asked ▮▮▮▮ if the victim has ever expressed any suicidal ideations/attempts in the past and she said no.

-I asked her if he had any history of depression and she said that he takes medication for depression and has for a while. ▮▮▮▮ advised that the victim went over to one of his friend`s place a few days before he came to Charleston. And told her that if anything ever happens to him, to investigate it because he would never do anything to himself. ▮▮▮▮ provided this friend`s information as: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

-I asked ▮▮▮▮ if the victim had any medical conditions and she said that he takes medication, but she does not know what they`re for.

\*The above is a summary, review the recording for additional information. \*
\*\*\*\*\*\*\*\*\*\*
The recorded interview was entered into CPD evidence.

Nothing further.

| | |
|---|---|
| Investigator Signature | Supervisor Signature |

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024   09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | | |
|---|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | | |

| | | |
|---|---|---|
| **Investigator:** DELUCIA, J. R. (2495) | **Date / Time:** *03/13/2024 16:05:33, Wednesday* | |
| **Supervisor:** TUTTLE, E. M. (1604) | **Supervisor Review Date / Time:** *03/21/2024 15:58:28, Thursday* | |
| **Contact:** | **Reference:** *Supplemental Report* | |

OCA: 24-03740
Incident Date: 03/09/2024
Incident: Suicide
Incident Location: 301 Savannah Hwy. Charleston, SC, 29407
Victim: John Barnett

---

*03/13/2024*
-Follow up at the incident location.
-Follow up at Waffle House (325 Savannah Hwy.)

---

On 03/13/2024 at approximately 0930 hours I (Det. DeLucia) followed up at the incident location. Upon arrival I met with ▓▓▓▓ (manager / listed other). I asked ▓▓▓▓ about the entrances/exits of the hotel and if all locations were covered/recorded by their surveillance footage and she responded in the affirmative. ▓▓▓▓ advised the following:
*****
CAM 5 - Lobby Entrance / Exit
CAM 2 - Entrance / Exit closest to SC 61 (near where the victim`s vehicle was located).
CAM 3 - Employee Entrance / Exit that lets out in the direction of Waffle house. If an individual leaves through this door they will then be captured on CAM 8.
CAM 7 - Entrance / Exit to the smoking area. A guest cannot reenter through this door if they leave & close the door.
*****
Furthermore, I asked ▓▓▓▓ if she would provide me with the victim`s room rental records and she obliged. The requested records were printed and provided to me. These records were entered into CPD evidence. The received records can be summarized as follows:
*****
+ Record #1
1 Page
Name: John Barnett
Address listed: ▓▓▓▓ Picher OK 74360 United States
Folio #: 517629
Room No: 0511
Arrival: 02/26/24
Departure: 03/02/24
Conf No: 87422379

+ Record #2
2 Pages

---

| Investigator Signature | Supervisor Signature |
|---|---|

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*          **Case Mng Status:** *PENDING ACTIVE*          **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *DELUCIA, J. R. (2495)*          **Date / Time:** *03/13/2024 16:05:33, Wednesday*

**Supervisor:** *TUTTLE, E. M. (1604)*          **Supervisor Review Date / Time:** *03/21/2024 15:58:28, Thursday*

**Contact:**          **Reference:** *Supplemental Report*

---

Name: John Barnett
Address listed: ███████████ OK 74360 United States
Folio #: 517944
Room #:0511
Arrival: 03/02/24
Departure: 03/06/24
Conf No: 25905124

+Record #3
1 Page
Name: John Barnett
Address Listed: United States
Folio #: 518161
Room #: 0511
Arrival: 03/06/24
Departure:03/09/24
Conf no: 24808340

The card associated with purchases on all records is: Master Card ending in 1779.

*The above is a summary, review the records for additional information. *
*****
After leaving the incident location I followed up at Waffle House (325 Savannah Hwy.) and met with an employee who permitted me to access the surveillance system. Due to the length of the needed timeframe, I inquired if I could download the needed footage & the employee advised that the video request would have to be sent to corporate. I provided the employee with my business card & the needed dates & timeframe for the video footage (03/08/24 from 1900 hours through 03/09/24 at 1015 hours). The employee advised that I will be further contacted by corporate in reference to this request.

At approximately 1525 hours I received an email from Webb Redmond (███████@wafflehouse.com | Director of Security Waffle House Inc.) requesting that I call him. I contacted him via phone (████████) at approximately 1536 hours and a representative answered advising that Webb was not available, and he will contact me back.

Nothing further.

---

Investigator Signature                    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*  **Case Mng Status:** *PENDING ACTIVE*  **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *SPRATT, L. F. (2311)*  **Date / Time:** *03/15/2024 13:17:36, Friday*

**Supervisor:** *BENNETT, H. R. (2442)*  **Supervisor Review Date / Time:** *03/16/2024 09:21:45, Saturday*

**Contact:**  **Reference:** *Crime Scene Log*

---

Crime Scene Supplemental Report

Case Number:  2403742
Date/Time of Response:     March 13, 2024 / 1145 hrs.
Location of Response:  Jennings Towing, 2026 Meeting Street Rd.
Rpt. Crime Scene Supervisor:   L. Spratt
Evidence Collected:     No
Evidence sent to Latent Recovery:  No
Photos taken:   Yes
Fingerprint processing at scene:     No
Number of latent lifts:  0
Weather:   Clear, Sunny, Warm

On March 13, 2024 at approximately 1145 hrs., reporting Crime Scene Supervisor (R/CSS) responded to Jennings Towing at 2026 Meeting Street Rd., in the City of Charleston, SC, in reference to a follow-up in a death investigation

Scene Description: Jennings Tow Lot, secured with standard fencing.

R/CSS spoke with Detective Tuttle by phone. A discussion was had about any additional searching to be conducted on the victim`s vehicle prior to its release. Based on the initial response and evidence it was determined a secondary search for the projectile should be conducted to attempt to recover it presumably from the interior roof area where the apparent hole was located.

R/CSS spoke with CSI Bennett about her initial search on scene. Details of this search can be read in her supplemental report. This initial search did not include any destructive or invasive searching which is typical- based on the facts of the case on scene. This type of search was now determined to be warranted and requested by Detective Tuttle.

Detective Galka was present on scene with keys for the vehicle. The keys were utilized to gain access to the vehicle.

Vehicle Information: Orange in color Dodge Ram 1500, LA tag: 

R/CSS photographed the vehicle for documentation. It should be noted that a memory card issue occurred with R/CSS`s issued Nikon camera preventing photographs from being taken on that device. Due to this, photographs were taken utilizing R/CSS`s assigned department cell phone.

---

Investigator Signature                          Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*          **Case Mng Status:** *PENDING ACTIVE*          **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *SPRATT, L. F. (2311)*                          **Date / Time:** *03/15/2024 13:17:36, Friday*

**Supervisor:** *BENNETT, H. R. (2442)*          **Supervisor Review Date / Time:** *03/16/2024 09:21:45, Saturday*

**Contact:**                                              **Reference:** *Crime Scene Log*

---

R/CSS observed an apparent bullet hole in the roof lining above the front driver seat. Photographs were taken as that section of the roof lining was removed. A corresponding perforating hole was observed in a foam insulation piece above the roof lining. This hole perforated (or continued through) the foam insulation piece. Above this perforating hole, on the interior side of the metal roof of the vehicle was an apparent corresponding defect. No perforation through the metal portion of the roof was observed. Based on the perforating holes in the roof lining and foam insulation piece, with a defect (no perforation) of the interior side of the metal roof, the approximate trajectory of the projectile that caused this damage would have had to travel in an upward vertical direction. Additionally, the perforating hole in the foam insulation showed the projectile would have had to travel horizontally in a slightly right to left directionality.

A thorough search of the cavity between the roof lining and the interior side of the metal roof was conducted to attempt to locate the projectile. Additionally, other accessible interior panels of the vehicle were removed in the search as well as a search of the interior of the cab of the vehicle. This search led to negative results. It should be noted that there are numerous inaccessible cavities of the interior cab of the vehicle where the projectile could have come to rest. Additionally, the vehicle having been towed since the incident could have displaced the projectile within the vehicle cavities.

Additional photographs with a scale were taken of the perforating holes and the defect in the roof for documentation.

R/CSS was contacted by Digital Analyst Maria Heffron who requested vehicle information on the vehicle`s infotainment system to determine its compatibility with their extraction software. R/CSS accessed the vehicle`s infotainment system to gain access to this information. Analyst Heffron advised that the vehicle was not compatible.

Photographs were submitted to VeriPic Digital Evidence Manager under the assigned case number.

No further information at this time.

_____

END/ LFS

---

Investigator Signature                                    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*        **Case Mng Status:** *PENDING ACTIVE*        **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *TUTTLE, E. M. (1604)*

**Supervisor:** *MELLETTE, M. (1805)*

**Contact:**

**Date / Time:** *03/15/2024 15:21:43, Friday*

**Supervisor Review Date / Time:** *03/20/2024 12:34:14, Wednesday*

**Reference:** *Supplemental Report*

---

OCA: 2403740
Incident: Death Investigation

-Friday, March 15, 2024-

Amy Pocklington and Max Welsh of Ogletree Deakins law firm contacted me around 15:00 hours in reference to this case.  I, Detective Sergeant Eric Tuttle, conducted an audio recorded interview that may be summarized as follows:

Amy was one of the two attorneys for Ogletree representing Boeing during the deposition of the victim.  She deposed him on Thursday, March 7, 2024 for about seven hours while at their (Ogletree office), located at 211 King Street.  They completed their questioning on Thursday.  The victim`s attorney began their questioning for the deposition around 11:00 hours.  Friday lasted until around 17:00 hours, with a lunch break.

The victim appeared and expressed that he was tired and that he was eager to return to Louisiana.  The attorneys met in private and agreed to return the following day (Saturday, March 9, 2024) at 10:00 to complete the deposition of the victim.

This deposition was the only time that Amy had met Mr. Barnett in person.  She did not note anything unusual, aside from his fatigue from the deposition and his yearning to return home.  She was not aware of any suicidal ideations from the victim or any threats against him.

She and Max were unable to comment on how the death would affect Boeing`s position with the case; however, she did note that victim`s attorney notified Ogletree they intended to continue the suit on behalf of the victim`s estate.

-End- (Refer to audio recording for full interview)

---

Investigator Signature                    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | |
|---|---|
| **Investigator:** GENNA, G.  (2351) | **Date / Time:** *03/15/2024 19:05:05, Friday* |
| **Supervisor:** TUTTLE, E. M. (1604) | **Supervisor Review Date / Time:** *03/21/2024 15:55:00, Thursday* |
| **Contact:** | **Reference:** *Supplemental Report* |

OCA: 2403740
Incident: Death Investigation
Incident Location: 301 Savannah Hwy., Charleston SC 29414 (Holiday Inn)
Incident Date: 3/9/2024
Victim: John Barnett

On 3/15/2024 at approximately 530pm, I (Det. Genna) made telephonic contact with ███████████ in reference to any possible knowledge she has in refence to Mr. Barnett`s death.

The phone conversation was recorded on my CPD issued body worn camera and has been uploaded to the CPD IRSA Cloud. The conversation is summarized below.

Ms. ██████ and Mr. Barnett have known each other since the late 1970 when they were in high school. Mr. Barnett`s mother and her mother are best friends.

Ms. ██████ stated that Barnett moved back to Louisiana in 2017 and she sees him roughly once a month. The last time ██████ saw Mr. Barnett was on February 24 2024, when Mr. Barnett was a pal bearer for her father`s funeral. When asked about any suicidal thoughts or ideations, she advised that Barnett was always upbeat and joking around.

Ms. ██████ was asked to explain the context of the statement she made to the media in regard to her saying Barnett told her "If I am found dead, it was not a suicide". ██████ stated that they were sitting around after her father`s funeral joking around when they began to speak about the depositions. She advised that Barnett wasn`t worried about them and just wanted to get over with them. She advised that they continue to make jokes and sarcastic comments about the situation (depositions).  She further stated that when Barnett made the comment, she added what are they going to "Clinton" you.

██████ was asked about how she came to talk to the media about the comment. ██████ stated that she told Barnett`s mother about his statement who told Barnett`s attorney. She then stated that the attorney contacted her, asked her a couple of questions then asked her if she would speak to Anna Emerson, who is a reporter for WCIV/ABC channel 4 in Charleston. ██████ agreed to speak with her.

██████ had no intimate knowledge of the death of have any additional information to provide.

Nothing further.

| | |
|---|---|
| Investigator Signature | Supervisor Signature |

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*     **Case Mng Status:** *PENDING ACTIVE*     **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *BROWN, Y. D. (1191)*     **Date / Time:** *03/19/2024 15:58:08, Tuesday*

**Supervisor:** *BROWN, Y. D. (1191)*     **Supervisor Review Date / Time:** *03/19/2024 16:03:26, Tuesday*

**Contact:**     **Reference:** *Supplemental Report*

---

Incident #: 24-03740
Incident Type: Death Investigation

On March 9, 2024 I, Sgt. Y. Brown requested receipts from Holiday Inn Manger, ██████ in reference to seeing the time frame in which the victim was a guest at the incident location. On March 18, 2024 I submitted those requested receipts (2 sheets) into CPD Evidence.

Nothing Further......

---

Investigator Signature                    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*     **Case Mng Status:** *PENDING ACTIVE*     **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *MALONE, D. R. (2237)*     **Date / Time:** *04/06/2024 12:15:23, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*     **Supervisor Review Date / Time:** *04/06/2024 13:06:21, Saturday*

**Contact:**     **Reference:** *Supplemental Report*

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On March 11th, 2024 I (Detective Malone) made myself familiar with the facts of this investigation.  At approximately 1030 hours, Detective Delucia and I made contact with the victim`s attorney (Rob Turkewitz, ███████ ██@rmtlegal.com) via telephone and obtained the following information related to the victim:

- The deposition took place at 411 King Street, the offices of the Ogletree Law firm.
- Thursday, March 7th was the first day of the deposition, with the deposition continuing through Friday, March 8th and into Saturday, March 9th.  The victim drove with Turkewitz on Thursday and drove himself to the deposition on Friday.
- The victim chose the Holiday Inn hotel himself and was not put up by his attorney`s office.
- The victim`s lawsuit, and subsequent depositions, were related to a whistleblower retaliation complaint from when the victim worked at Boeing.
- The victim`s case is set for Trial in June of 2024.  Per Turkewitz, the victim was in good spirits and was looking forward to his day in court.  Turkewitz also said that the deposition went well for the victim and a lot of damaging information against Boeing was relayed.
- The victim`s phone number is ██████████

At approximately 1200 hours, I spoke with Deputy Coroner Butler via telephone.  DC Butler notified me that the autopsy was completed.  The victim suffered from a single, close contact gunshot wound to the head.  The victim did not have any additional trauma to his body.  This information, in addition to the note left behind in the victim`s vehicle, is, at this point in the investigation, consistent with suicide.

I then began a review of Holiday Inn video footage which was gathered by Detective Delucia during the initial investigation.  During that review, I located the victim entering the hotel, by himself, at 19:26:18 hours on March 8th, 2024.  Further review is needed to capture the victim exiting the hotel.

The investigation continues...

Investigator Signature                    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024   09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*      **Case Mng Status:** *PENDING ACTIVE*      **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *MALONE, D. R. (2237)*                              **Date / Time:** *04/06/2024 12:16:41, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*           **Supervisor Review Date / Time:** *04/06/2024 13:05:15, Saturday*

**Contact:**                              **Reference:** *Supplemental Report*

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On March 12th, 2024 I (Detective Malone) responded to the Charleston County Coroner`s Office and took possession of the victim`s notebook (containing the suicide statements) as well as other autopsy evidence (pulled head hair, entry wound shaved hair, tape lifts, fingernail clippings, hair found from L#5 tip).  Upon returning to CPD headquarters I logged these items into CPD evidence.  I also requested that the notebook and note containing the suicide statements be processed for fingerprints.

I also submitted a request that the firearm used in this incident be fully processed by CPD forensic lab to include test firing and processing through the National Integrated Ballistic Information Network.

The investigation continues...

Investigator Signature                         Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*    **Case Mng Status:** *PENDING ACTIVE*    **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *MALONE, D. R. (2237)*    **Date / Time:** *04/06/2024 12:17:38, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*    **Supervisor Review Date / Time:** *04/06/2024 13:07:24, Saturday*

**Contact:**    **Reference:** *Supplemental Report*

---

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On March 13th, 2024 I (Detective Malone) received information from Robert Turkewitz in reference to the individual who sold the victim the Smith and Wesson firearm that was located in the victim`s hand during the initial investigation. That individual identifies herself as ███████ ██████████) and the email states that she sold the victim the firearm sometime between 1999-2000.

I then drafted a search warrant for the victim`s CDR information (target # ██████████) and presented the search warrant to the Honorable Judge Gosnell. I swore to the facts contained within the search warrant and it was signed. No other facts of the case were discussed. Upon returning to CPD headquarters, I submitted the search warrant to AT&T at 12:38 hours (ATT file code: 3880077).

I also submitted a request with the Charleston Police Department forensic services division requesting that the victim`s notebook/suicide note be processed for fingerprints. I also requested that crime scene technicians photograph the pages in the notebook prior to the fingerprint processing.

I then continued the review of the Holiday Inn camera footage. During this review, I observed the victim entering the hotel, exiting the hotel and parking his vehicle in the parking spot where it was located. The exact time stamp of these activities are as follows:

March 8th, 2024:
-    19:26:18 hours: Victim observed entering the hotel via the main entrance. The victim is wearing dark pants and a plaid, cutoff shirt.
-    20:37:23 hours: Victim is observed exiting the hotel via the main entrance. The victim is wearing a dark jacket, however his plaid shirt is observed protruding from the bottom of the jacket. Victim is also wearing the same dark pants and same shoes.
-    20:45 hours: Vehicle backs into parking space where victim vehicle was located
-    21:17:56 hours: Brake lights are illuminated in the parking spot.
-    21:19:44 hours: Brake lights go out. Once these lights extinguish, the vehicle does not move until it is located by law enforcement the next day.

Several hours later I received some of the victim`s medical records from Robert Turkewitz. These medical records document that, since February of 2017, the victim has suffered from anxiety, depression, ongoing nightmares and often wakes in a panicked state. Additionally, these medical records indicate that "anytime he must engage with legal case he experience increased anxiety."

---

Investigator Signature                          Supervisor Signature

**CASE SUPPLEMENTAL REPORT**    Printed: 05/13/2024  09:42

*Charleston Police Department*    OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*    **Case Mng Status:** *PENDING ACTIVE*    **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *MALONE, D. R. (2237)*    **Date / Time:** *04/06/2024 12:17:38, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*    **Supervisor Review Date / Time:** *04/06/2024 13:07:24, Saturday*

**Contact:**    **Reference:** *Supplemental Report*

---

Per the provided medical records, the victim last reported these symptoms to Deborah Still, a Charleston based psychotherapist, on March 4th, 2024.  These medical records state, "Client continues to exhibit sxs of PTSD: anxiety, sadness, fear of impending death of others and intrusive thoughts."

The investigation continues...

Investigator Signature                    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*         **Case Mng Status:** *PENDING ACTIVE*         **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *MALONE, D. R. (2237)*                     **Date / Time:** *04/06/2024 12:21:42, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*         **Supervisor Review Date / Time:** *04/06/2024 13:03:14, Saturday*

**Contact:**                                 **Reference:** *Supplemental Report*

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On March 14th, 2024 I (Detective Malone) received the eTrace on the firearm used by the victim during this incident (Smith and Wesson 9mm handgun, SN: ███████ ).  This eTrace report indicates that the firearm was purchased on August 1st, 1996 from Oshman Sporting Goods located at 1101 Super Mall, Auburn, Washington.  The firearm was purchased by ███████████, who is the individual that informed Robert Turkewitz that she sold the firearm to the victim between 1999-2000.

The investigation continues...

Investigator Signature                                 Supervisor Signature

**CASE SUPPLEMENTAL REPORT**                        Printed: 05/13/2024  09:42

*Charleston Police Department*                                OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*      **Case Mng Status:** *PENDING ACTIVE*        **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *MALONE, D. R. (2237)*                  **Date / Time:** *04/06/2024 12:34:29, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*       **Supervisor Review Date / Time:** *04/06/2024 13:02:41, Saturday*

**Contact:**                                         **Reference:** *Supplemental Report*

---

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On March 15th, 2024 I (Detective Malone) received a NIBIN lead notification indicating that the fired cartridge casing (FCC) recovered from inside the victim`s vehicle matches the silver-in-color Smith and Wesson firearm located in the victim`s hand.

The investigation continues...

---

Investigator Signature                          Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | | |
|---|---|---|
| **Investigator:** *MALONE, D. R. (2237)* | **Date / Time:** *04/06/2024 12:35:24, Saturday* | |
| **Supervisor:** *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** *04/06/2024 13:02:21, Saturday* | |
| **Contact:** | **Reference:** *Supplemental Report* | |

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On March 19th, 2024 I (Detective Malone) received the completed forensic extraction for the victim`s cell phone.  That extraction is summarized as follows:

Device Info:
- MSISDN: ███████████

Text Messages/Phone calls:
- 2/21/2024 at 15:33:43 hours:  Messages ███████████, "Boeing is taking my deposition on Wednesday… I might be done talking by Friday."
- 2/25/2024 at 14:03:13 hours:  Begins searching hotels in Charleston, SC
- 2/29/2024 at 19:09:44 hours:  Places phone call to ███████████ (███████████) for 29m 38s
- 3/06/2024 at 11:38:44 hours:  Receives message from Robbie, "You ok little brother?"
- 3/06/2024 at 12:27:19 hours:  Messages Robbie, So far, so Good.  Tomorrow is a big day."
- 3/06/2024 at 21:31:49 hours:  Receives message from ███████████, "Hey John, I can`t make it up there this weekend.  I have too much going on down here.  Hope to catch up with you soon!"
- 3/07/2024 at 15:07:28 hours:  Receives message from mom, "Did you get your medicine yesterday?"
- 3/07/2024 at 19:25:05 hours:  Receives message from ███████████, "Really hope you had a successful day today."
- 3/07/2024 at 19:57:43 hours:  Messages Brian Knowles, Rob T, "Am I allowed to review documents tonight?"
- 3/08/2024 at 07:54:57 hours:  Messages Brian Knowles, "Can you talk?"
- 3/08/2024 at 08:05:06 hours:  Received phone call from Brian Knowles (2m 48s)
- 3/08/2024 at 18:31:47 hours:  Replies to mom, "Yes Ma`am."

Web searches:
- 2/05/2024: ███████████
- 2/07/2024: ███████████
- 2/13/2024: ███████████
- 2/14/2024: ███████████

Emails:
- 2/28/2021 at 09:19:56 hours:  Email sent to ███████████, "I`m trying to figure out what it would take to "make me whole again". I really don`t know where to start answering that question. Looking at the definition, I found where it states… To restore (someone) to a sound, healthy, or otherwise favorable condition. To repair or

| Investigator Signature | Supervisor Signature |
|---|---|

**CASE SUPPLEMENTAL REPORT**                    Printed: 05/13/2024  09:42

*Charleston Police Department*                                    OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*        **Case Mng Status:** *PENDING ACTIVE*        **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *MALONE, D. R. (2237)*                          **Date / Time:** *04/06/2024 12:35:24, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*          **Supervisor Review Date / Time:** *04/06/2024 13:02:21, Saturday*

**Contact:**                                                      **Reference:** *Supplemental Report*

---

restore (something). I fully understand the direct costs that we can establish, i.e. lost pay, lost bonuses, etc. What I am struggling with is, how do you repair or restore a person`s overall outlook on life? I used to be a very happy go lucky guy that loved his job, his Company and the products they built. I had a very positive outlook on life. Boeing has absolutely destroyed my outlook on life. I often sit here and think, what`s the use, what`s the point of life? A person works hard all their life, trying to do the right thing, treating others with respect, just to have their entire professional life destroyed because they were doing as they were trained and expected to do…follow the rules. What is a person`s "outlook on life" worth? And looking at the mental toll it has had on me. I suffer from anxiety attacks, depression, panic attacks, PTSD… I`ve got an anger inside me that I`ve never experienced before and I don`t understand how to control… How do you put a price on that? Sometimes I think…maybe if I go out and find a job, it will help. And then the anxiety hits just thinking about having to report to someone that has control over me and my performance ratings. I don`t have the mental fortitude to put myself in that position again…I just can`t do it, not right now anyway. How do you put a price on that? Each time I do an interview, deposition or other stressful discussion on what happened with me and Boeing, I re-live those years all over again. It puts me in a deep depression for a week or two, (depending on the intensity level of the discussion). I shut myself in, I don`t want family or friends coming over, I am angry at the world!…"

There were multiple other emails documenting the victim`s legal case against Boeing, however I did not locate any threats or other communication related to the victim`s lawsuit that occurred with anybody outside of his legal team.  I also did not observe any threats or harassment in any of the victim`s communication.

At approximately 1400 hours I received two fingerprint reports from the CPD forensics laboratory.  Report number 2 states that no fingerprints were recovered from the firearm located in the victim`s possession.  Report number 3 states that 8 fingerprints were recovered from the red notebook recovered in the victim`s vehicle.  Several of these fingerprints were suitable for comparison via the AFIS system, however not matches were discovered.

The investigation continues...

---

Investigator Signature                          Supervisor Signature

**CASE SUPPLEMENTAL REPORT**                           Printed: 05/13/2024  09:42

*Charleston Police Department*                                    OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*      **Case Mng Status:** *PENDING ACTIVE*      **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *MALONE, D. R. (2237)*              **Date / Time:** *04/06/2024 12:37:26, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*      **Supervisor Review Date / Time:** *04/06/2024 13:00:24, Saturday*

**Contact:**                                           **Reference:** *Supplemental Report*

---

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On March 21st, 2024 at approximately 0600 hours I (Detective Malone), received the victim`s CDR information from the AT&T Global Legal Demand Center. I forwarded that CDR information to the Charleston Police Department Crime Intelligence Unit for plotting and analysis.

Several hours later I received the plotted data from CIU Analyst Lalumia. The data plots were from midnight on March 8th, 2024 until the phone stopped communicating with the cell towers on March 8th, 2024 at 21:20:21 hours.

During this time frame, the victim`s cell phone is locating at the Holiday Inn located at 301 Savannah Highway. The cell phone remains at that location until approximately 10:12:55 hours, when the victim heads onto the peninsula to attend his deposition on King Street. The victim`s cell phone last communicates with the cell towers at 10:36:49 hours before beginning to communicate once again at 18:04:37 hours. It should be noted that this time frame is the approximate time that the victim was conducting his deposition on March 8th, 2024.

The victim`s cell phone then returns to 301 Savannah Highway where it remains until the cell phone stops communicating with the tower (more than likely running out of battery power).

During this entire time frame, the victim`s cell phone does not locate anywhere outside of the 301 Savannah Highway/downtown Charleston area.

The investigation continues...

---

Investigator Signature                          Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | | |
|---|---|---|
| **Investigator:** *MALONE, D. R. (2237)* | **Date / Time:** *04/06/2024 12:46:23, Saturday* | |
| **Supervisor:** *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** *04/06/2024 12:59:56, Saturday* | |
| **Contact:** | **Reference:** *Supplemental Report* | |

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On March 26th, 2024 I (Detective Malone) made contact with Deputy Coroner Butler in reference to the fingerprints recovered from the notebook containing the suicide statements. DC Butler confirmed that the victim`s fingerprints were rolled during the autopsy and I requested a copy of that fingerprint card in order to compare them against the fingerprints recovered from the notebook. I will pick up this fingerprint card at a later date.

At 1230 hours I, along with Sergeant Tuttle, met with the victim`s mother (████████████) and his brother (███████████████) at CPD headquarters in order to provide them an update into the investigation and answer any questions they may have. Our interview, which was recorded on Sergeant Tuttle`s body worn camera, is summarized as follows:

Person Interviewed:

████████████

-    ████████ and her son, ███████████, came to the police station in order to clarify rumors and misleading information that they heard via multiple media outlets.
-    Sergeant Tuttle and I answered as many questions as possible and informed them of the on-going investigation.
-    Of note, Ms ██████ mentioned the note left behind by the victim, specifically the part in the note that states, "Bury me face down so Boeing and their lying ass leaders can kiss my ass." ██████ states that the victim used to say that to her all the time regarding this case and that it was a common thing for him to say.
-    I notified Ms. ██████ that I would remain in contact with her and that we would go over the case in its entirety once completed.

The interview was then concluded. For detailed viewing see the BWC video which was uploaded per CPD policy.

The investigation continues...

| | |
|---|---|
| Investigator Signature | Supervisor Signature |

**CASE SUPPLEMENTAL REPORT**                              Printed: 05/13/2024  09:42

*Charleston Police Department*                                    OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*          **Case Mng Status:** *PENDING ACTIVE*          **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *MALONE, D. R. (2237)*                    **Date / Time:** *04/06/2024 12:47:59, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*       **Supervisor Review Date / Time:** *04/06/2024 12:59:17, Saturday*

**Contact:**                                              **Reference:** *Supplemental Report*

---

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On March 27th, 2024 I (Detective Malone) received a Record of Conversation from our FBI Task Force Officer (Detective Mapp).  This Record of Conversation was completed on March 19th, 2024 by Special Agent Ashley Strickland with the US Department of Transportation Officer of Inspector General and documents a conversation that took place between her and the victim`s attorneys (Rob Turkewitz and Brian Knowles).  A portion of this Record of Conversation indicates that a tow-truck driver for employed by Jenning`s Towing (identified as ███████, ███████████ spoke with Knowles and Turkewitz when the pair went to Jenning`s Towing to look at the victim`s truck.  Per the attorneys, ███████ stated that he towed the victim`s truck from the Holiday Inn.

While picking up the truck, Knowles and Turkewitz state that ███████ said that a Charleston Police Officer approached him and stated that the victim "sliced his wrists in the hotel room and then went outside and shot himself.  ███████ said there had been a blanket on the body and that the police threw it into the back of the truck…"  The report also states, ███████ told Knowles and Turkewitz that it didn`t seem like a suicide to him."

I placed this Record of Conversation, along with several attached photographs of the victim`s truck (taken by the attorneys) into the case file.

The investigation continues...

---

Investigator Signature                          Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024 09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | | |
|---|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | | |

| | | |
|---|---|---|
| **Investigator:** *MALONE, D. R. (2237)* | **Date / Time:** | *04/06/2024 12:49:39, Saturday* |
| **Supervisor:** *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** | *04/06/2024 13:02:29, Saturday* |
| **Contact:** | **Reference:** | *Supplemental Report* |

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On March 28th, 2024 I (Detective Malone) received a request from the Charleston County Coroner`s Office that the victim`s pickup truck be x-rayed in order to locate the projectile from the firearm used in this incident. It should be noted that an effort was made by Detective Galka and Crime Scene Technician Spratt to locate the fired projectile in the victim`s vehicle, however that attempt was unsuccessful.

I made contact with Sergeant Haithcock (CPD Explosive Devices Unit sergeant) who stated they would be able to x-ray the vehicle in an attempt to locate the projectile.
At approximately 1200 hours, I responded to Jennings Towing (2026 Meeting Street Road) and requested that the victim`s vehicle be transported to 62 Brigade Street (CPD warehouse) in preparation for the EDU team to conduct their inspection.

While at Jennings, I spoke with ████████████ (██████) who is the Jenning`s employee mentioned by Knowles and Turkewitz in the DOT investigation report. ██████ informed me that he was not the driver who towed the victim`s truck on the date of the incident and stated that he was not on scene at the Holiday Inn hotel that morning. ████ did state that the two lawyers responded to Jenning`s Towing several days later to inspect the truck and asked ████ several questions, to include whether or not the pickup truck was processed at the CPD forensics building.

████ informed the attorneys that he has no knowledge of the Charleston Police Department`s investigative techniques and that his only responsibility is transporting the vehicle when called upon to do so.

I directly asked ████ if he made any statements to the attorneys in reference to a CPD officer notifying ████ of the victim`s injuries. ████ reiterated that he was not on scene that day, did not speak with any CPD officers, has zero knowledge of the victim`s injuries and never stated to either attorney that he was approached by a CPD officer. ████ also informed me that nobody at Jenning`s Towing was even aware of who the victim was until days later when details started emerging in the media.

I then followed the victim`s pickup truck to the CPD warehouse and ensured it was properly stored and secured.

EDU will conduct their inspection on the morning of March 29th, 2024.

The investigation continues...

Investigator Signature                              Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*        **Case Mng Status:** *PENDING ACTIVE*        **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *MALONE, D. R. (2237)*                **Date / Time:** *04/06/2024 12:51:26, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*        **Supervisor Review Date / Time:** *04/06/2024 12:56:52, Saturday*

**Contact:**                                **Reference:** *Supplemental Report*

---

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On March 29th, 2024 at approximately 0830 hours I (Detective Malone) responded to the Charleston County Coroner`s Office (4000 Salt Pointe Pkwy) and retrieved copies of the victim`s fingerprint cards.  Upon returning to CPD headquarters I logged these fingerprint cards into CPD evidence.  I also submitted a request that these known fingerprints be compared to the prints recovered from the notebook.

At approximately 0930 hours I responded to 62 Brigade Street (Charleston Police Department warehouse) to assist the Charleston Police Department EDU team in conducting a x-ray inspection of the vehicle.  I briefed the EDU team on the facts of the case and they conducted their inspection.  The EDU team took a radiograph of the roof of the vehicle directly over the victim`s head and observed a projectile shaped anomaly near the top door jamb of the driver`s door, just over where the victim`s left shoulder would have been.

Sergeant Haithcock conducted a physical search of the area and located the fired projectile lodged in the roof of the vehicle exactly where the anomaly appeared on the radiograph.
Upon obtaining the fired projectile, the inspection of the vehicle was concluded.  I called Jenning`s Towing and had the vehicle towed back to the Jenning`s Towing yard.

I then returned to CPD headquarters and entered the fired projectile into CPD evidence.  Of note, the projectile weighs approximately 7.41 grams, which is consistent with the average weight of a 9mm projectile.  The projectile was also full metal jacket which is consistent with the other cartridges located in the victim`s handgun.

The investigation continues...

---

Investigator Signature                                Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*     **Case Mng Status:** *PENDING ACTIVE*     **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *MALONE, D. R. (2237)*     **Date / Time:** *04/06/2024 12:53:05, Saturday*

**Supervisor:** *TUTTLE, E. M. (1604)*     **Supervisor Review Date / Time:** *04/06/2024 12:55:41, Saturday*

**Contact:**     **Reference:** *Supplemental Report*

---

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On April 2nd, 2024 at approximately 1145 hours I (Detective Malone) responded to the Charleston County Coroner`s Office and retrieved the original copy of the victim`s fingerprint cards (the copies I obtained on March 29th were not suitable for making a comparison).

I then transported the fingerprint cards to the Charleston Police Department Forensic Services Building and signed them over to Nova Grilli, the Charleston Police Department Friction Ridge Manager. It should be noted that, due to this evidence belonging to the Coroner`s office and not being entered into the CPD evidence module, it was assigned a bag and item number (bag 30, item 1) that will not correspond to a number found in the CPD evidence module. Upon the completion of the fingerprint comparison, the victim`s fingerprint card will be returned to the Coroner`s office.

At approximately 1415 hours I submitted a request to have the recovered firearm (bag 1, item 101), recovered FCC (bag 4, item 104) and recovered fired projectile (bag 22, item 1) sent to SLED for forensic analysis.

The investigation continues...

---

Investigator Signature                                        Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | |
|---|---|
| **Investigator:** *MALONE, D. R. (2237)* | **Date / Time:** *04/06/2024 12:57:42, Saturday* |
| **Supervisor:** *TUTTLE, E. M. (1604)* | **Supervisor Review Date / Time:** *04/06/2024 12:59:28, Saturday* |
| **Contact:** | **Reference:** *Supplemental Report* |

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On April 5th, 2024 at approximately 1100 hours, Detective Broadwater transported the recovered firearm, recovered FCC and recovered projectile to SLED for further forensic analysis.  The SLED lab number attached to this evidence is L24-05753.

The investigation continues...

Investigator Signature                    Supervisor Signature

# CASE SUPPLEMENTAL REPORT

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*      **Case Mng Status:** *PENDING ACTIVE*      **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *HAITHCOCK, J. L. (1625)*        **Date / Time:** *04/09/2024 12:00:45, Tuesday*

**Supervisor:** *WILSON, D. G. (1739)*        **Supervisor Review Date / Time:** *04/25/2024 14:03:10, Thursday*

**Contact:**        **Reference:** *Supplemental Report*

---

On 03/29/2024, I, Sgt. Haithcock, met Sgt. Kursh, Det. A. King, Det. M. Bryan, and Det. D. Malone at 62 Brigade St. (CPD Warehouse). It was in reference to locating a bullet that was used in the incident listed in the report. Once all parties were on scene. Det. Malone gave us access to the vehicle. I used my flashlight to locate the trajectory of the bullet. From a distance, it appeared as if the bullet had gone between the two pieces of sheet metal in the roof. Once you got closer, you could see that it had not penetrated the lower piece of metal but had been diverted towards the curtain airbag in the driver side rear seat. I had Sgt. Kursh place our X-ray panel on the top of the vehicle above the airbag. The X-ray source was placed on the floor. We shot the X-ray with 20 pulses at 4 feet from a Golden 150 X-ray device. We were able to locate the bullet inside of the curtain airbag. I cut the bullet out of the airbag with my knife. It fell to the floor of the warehouse where it was recovered by Det. M. Bryan. It was wrapped in a glove, and handed to Det. D. Malone. The bomb squad was done with the search and turned the vehicle back over to Det. Malone. We packed up and left the warehouse.

---

Investigator Signature           Supervisor Signature

**CASE SUPPLEMENTAL REPORT**                                    Printed: 05/13/2024  09:42

*Charleston Police Department*                                    OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*          **Case Mng Status:** *PENDING ACTIVE*          **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *MALONE, D. R. (2237)*                        **Date / Time:** *04/17/2024 13:27:59, Wednesday*

**Supervisor:** *WILSON, D. G. (1739)*        **Supervisor Review Date / Time:** *04/25/2024 10:43:55, Thursday*

**Contact:**                                        **Reference:** *Supplemental Report*

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On April 16th, 2024 at approximately 0900 hours I (Detective Malone) received the completed SLED ballistics report (L24-05753) related to the victim`s firearm.  That report, which was completed by Chad M. Smith, SLED forensic scientist, states that both the Fired Cartridge Casing and fired projectile recovered from the victim`s vehicle were fired by the firearm located in the victim`s hand (silver-in-color Smith and Wesson 9mm pistol).

The following facts have been obtained as a result of this investigation:
-      The victim suffered from a single, close contact gunshot wound to the head.
-      The incident occurred within the locked vehicle, which was owned and known to be operated by the victim.  There were no signs of struggle or forced entry into the vehicle prior to first responders arrival.
-      The victim was observed to have a firearm (silver-in-color Smith and Wesson, SN: ▮▮▮▮▮) gripped tightly in his right hand when located by officers.
-      This firearm was confirmed to belong to the victim which was purchased around the year 2000 from ▮▮▮▮▮ ▮▮▮▮▮  This was confirmed via the eTrace report conducted on the firearm.
-      A single fired cartridge casing and single fired projectile were recovered from the victim`s vehicle.  SLED ballistic analysis (L24-05753) confirms the FCC and projectile were fired by the victim`s firearm.
-The trajectory of the projectile is consistent with the gunshot wound.
-      A notebook containing what amounts to a suicide note was located, open, on the front, passenger seat of the vehicle.
-      Numerous fingerprints were recovered from this notebook and all of those recovered fingerprints (with the exception of 3 prints being inconclusive due to the prints not containing enough ridges for a positive identification) belong to the victim.
-      Per medical records provided by the victim`s lawyer, and emails located during an examination of the victim`s cell phone, the victim suffered from numerous mental health issues related to his whistleblower case.  These mental health issues are documented as being exacerbated. whenever the victim had to deal with the legal process related to his case
-      The victim`s call detail records (CDR) revealed no unusual travel or activity on the part of the victim and indicate that the victim spent his time at the deposition site (on King Street) and back at the hotel.
-      A forensic examination of the victim`s cell phone revealed no usual activity or conversations.  The victim did not receive any threats or usual phone calls/text messages during the time he was in Charleston.
-      The victim was observed on Holiday Inn security video entering the hotel, alone, on March 8th, 2024 at 19:26:18 hours.
-      The victim enters his room at 19:36 hours.
-      The victim is observed on Holiday Inn security video exiting the hotel, alone, on March 8th, 2024 at

_____                        _____
Investigator Signature                                Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024 09:42

*Charleston Police Department*

OCA: **2403740**

<span style="background-color: yellow">THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY</span>

| | | | |
|---|---|---|---|
| **Case Status:** | *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** | *DEATH INVESTIGATION* | | |

| | | |
|---|---|---|
| **Investigator:** | *MALONE, D. R. (2237)* | **Date / Time:** *04/17/2024 13:27:59, Wednesday* |
| **Supervisor:** | *WILSON, D. G. (1739)* | **Supervisor Review Date / Time:** *04/25/2024 10:43:55, Thursday* |
| **Contact:** | | **Reference:** *Supplemental Report* |

20:37:23 hours.
  -     The victim`s vehicle is observed on Holiday Inn security video backing into the parking space (where it was located the next morning) on March 8th, 2024 at 20:45 hours.

I am conferring with the Charleston County Coroner`s Office of the results of this investigation and await their official ruling on the cause and manner of the victim`s death.

The investigation continues...

_____                    _____
Investigator Signature                                                   Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *PENDING ACTIVE* | **Case Mng Status:** *PENDING ACTIVE* | **Occurred:** *03/09/2024* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | |
|---|---|
| **Investigator:** *GLADWELL, S. N. (1809)* | **Date / Time:** *04/25/2024 09:16:00, Thursday* |
| **Supervisor:** *BENNETT, H. R. (2442)* | **Supervisor Review Date / Time:** *04/27/2024 13:51:31, Saturday* |
| **Contact:** | **Reference:** *Crime Scene Log* |

Crime Scene Supplemental Report

Case Number:  2403740
Date/Time of Response:    03/14/2024 13:40
Location of Response:  Forensic Services Division
Reporting CSI: S. Gladwell
Evidence Collected:    No
Evidence sent to Latent Recovery:  No
Photos taken:   Yes
Video taken:    No
Fingerprint processing at scene:    No
Number of latent lifts:  0
Weather:    Interior

Scene:  Forensic Services Division

On the above date and time, R/I took additional photographs of a notebook that was collected by the Charleston County Coroner`s Office at a death investigation.

R/I photographed an orange `Boeing` notebook, along with any pages where handwriting was present.

Nothing else was requested of Crime Scene at this time.  Task completed.

END/SG

_____
Investigator Signature

_____
Supervisor Signature

**CASE SUPPLEMENTAL REPORT**

Printed: 05/13/2024  09:42

*Charleston Police Department*

OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*      **Case Mng Status:** *PENDING ACTIVE*      **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *MALONE, D. R. (2237)*                     **Date / Time:** *05/01/2024 12:16:06, Wednesday*

**Supervisor:** *TUTTLE, E. M. (1604)*      **Supervisor Review Date / Time:** *05/03/2024 12:32:59, Friday*

**Contact:**                                          **Reference:** *Supplemental Report*

---

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On April 29th, 2024 at 0930 hours I (Detective Malone) received the completed autopsy/toxicology report from the Charleston County Coroner`s Office.  That report, which was completed by JC Upshaw Downs, MD, lists the victim`s cause of death as "gunshot wound of head" and the victim`s manner of death as "suicide."

Sergeant Tuttle and I spoke with Coroner Bobbi Jo O`neal and arranged to hold a meeting at her office with the family (via Zoom) to present the findings of this investigation.  Coroner O`neal informed us that the family has requested that their attorneys (Rob Turkewitz and Brian Knowles) be in attendance for this meeting.  She further informed us that the family granted approval for a Netflix filmimg crew to be present during the hearing, however Coroner O`neal informed us that she denied approval for Netflix to be present during the meeting with the family.

The meeting to discuss the findings with the victim`s family is set for May 3, 2024.

Due to all evidence in this case indicating suicide, and the final coroner`s report listing the victim`s manner of death as suicide, I recommend that this case be reclassified as Pending Inactive.

---

Investigator Signature                                   Supervisor Signature

**CASE SUPPLEMENTAL REPORT**                    Printed: 05/13/2024  09:42

*Charleston Police Department*                                          OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*      **Case Mng Status:** *PENDING ACTIVE*      **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

---

**Investigator:** *TUTTLE, E. M. (1604)*                    **Date / Time:** *05/01/2024 12:48:52, Wednesday*

**Supervisor:** *MELLETTE, M. (1805)*      **Supervisor Review Date / Time:** *05/06/2024 14:31:31, Monday*

**Contact:**                                          **Reference:** *Supplemental Report*

---

April 11, 2024

I, Detective Sergeant Eric Tuttle, contacted Waffle House in reference to obtaining their exterior video from 325 Savannah Hwy (Store # 411).  They directed me to send a request via email to cctv@wafflehouse.com and I did so.  I requested video from 20:45 hours on March 8, 2024 through March 9, 2024 at 10:17 hours.

The provided me with a screen shot of their two exterior camera angles which face the incident location.  According to Google Maps, the distance between the cameras and the parking lot of the incident location is more than 250 feet.  Additionally, there is dense vegetation between the cameras and the parking lot, which obstructs the majority of the view of the parking lot.

April 26, 2024

Waffle House responded with a download link sent via email.

May 1, 2024

I downloaded the link which came in one zipped folder and contained three seperate folders.  The folders contained a proprietary software called VS Player.  The player then automatically loads the footage.  A brief initial review of the footage did not show the victim`s vehicle.

The videos were added to the case folder.

Nothing further.

---

Investigator Signature                                          Supervisor Signature

**CASE SUPPLEMENTAL REPORT**                    Printed: 05/13/2024  09:42

*Charleston Police Department*                                        OCA: **2403740**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *PENDING ACTIVE*      **Case Mng Status:** *PENDING ACTIVE*      **Occurred:** *03/09/2024*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *MALONE, D. R. (2237)*                **Date / Time:** *05/06/2024 15:39:08, Monday*

**Supervisor:** *TUTTLE, E. M. (1604)*      **Supervisor Review Date / Time:** *05/08/2024 23:23:43, Wednesday*

**Contact:**                                        **Reference:** *Supplemental Report*

Incident Type: Death Investigation
Incident Location: 301 Savannah Highway
Incident Date and Time: 3/09/2024 at approximately 1017 hours
OCA: 2403740

On May 3rd, 2024 at approximately 1000 hours I (Detective Malone), along with Sergeant Tuttle, arrived at the Charleston County Coroner`s Office to provide the investigation results to the victim`s family.  Upon arriving at the office I was notified by Coroner O`neal that the family attorneys (Rob Turkewitz and Brian Knowles) hired an investigative consultant, identified as Ray Nash, who would be sitting in on the meeting with the family in order to review the investigation.

I then observed the family attorneys arrive at the office accompanied by several Netflix production vehicles.  I observed the Netflix production crew actively filming the attorneys and actively filming outside the front of the office, in direct contradiction to what Coroner O`neal told us earlier in the week.

Based upon these developments, and upon consultation with Charleston Police Department command staff, it was decided that we would not be participating in the meeting.  Sergeant Tuttle and I then left the office and returned to CPD headquarters.

At approximately 1500 hours I made telephone contact with the victim`s brother, ███████████.  I explained the reasons that we were unable to participate in the morning meeting, and informed Mr. Barnett that I would be more than happy to brief the family on the findings of the CPD investigation should they wish.  Mr. Barnett stated that the family would like to speak with us regarding the investigation, and stated that he would notify me of a date and time that the meeting could take place.

Investigator Signature                                        Supervisor Signature