# Exhibit C

# AMENDED SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into by and between Vicky A. Stokes, Rodney L. Barnett, and Michael Barnett, each in their individual capacities and also collectively for and on behalf of the Estate of John Barnett in their capacities as the Independent Co-Administrators of the Succession of the late John Barnett (also sometimes referred to as the Personal Representatives of the Estate of John M. Barnett), including without limitation, each of their heirs, principals, affiliates, successors, assigns, agents, attorneys, and representatives (collectively, the "Barnett Estate"), and The Boeing Company (the "Company"), collectively referred to as the "Parties." This Agreement represents a full, final and complete settlement and release of any and all claims and/or disputes by and between the Barnett Estate and the Company and/or the Company Released Parties (defined below), including, without limitation, any and all claims and/or disputes the Barnett Estate has ever had against the Company and/or the Company Released Parties and that the Company and/or the Company Released Parties has or ever had against the Barnett Estate and/or the Barnett Released Parties (defined below) of any nature or kind whatsoever, including but not limited to those relating to or arising out of John Barnett's employment and separation of employment with the Company and the Federal Lawsuit (defined below). This Agreement is effective upon its execution by all Parties (the "Effective Date").

## RECITALS

WHEREAS, John M. Barnett was employed by The Boeing Company prior to March 1, 2017;

WHEREAS, John Barnett died by suicide on or about March 9, 2024;

WHEREAS, on March 19, 2025, the Barnett Estate filed a complaint in the United States District Court for the District of South Carolina, Charleston Division, Civil Action No. 2:25-cv-02110-BHH, against the Company (the "Federal Lawsuit");

WHEREAS, the Company denies the allegations against it in the Federal Lawsuit and denies it is liable for any claim asserted or that could have been asserted by John Barnett and/or the Barnett Estate in the Federal Lawsuit or any other action; and

WHEREAS, to avoid the expense and uncertainty of litigation, the Parties mutually desire to resolve all of the disputes arising from the Federal Lawsuit and any and all actual or potential claims by John Barnett and/or the Barnett Estate against the Company.

NOW THEREFORE, in consideration of the foregoing, and of the promises and mutual covenants herein contained, and the release contained in this Agreement, the Parties incorporate by reference the above and agree as follows:

1. **Identification of Released Parties.** For purposes of this Agreement, "Company Released Parties" includes the Company and without limitation, the Company's parent(s), holding company(ies), subsidiaries, sister companies, affiliates, and their respective current and former

officers, directors, shareholders, employees, agents, attorneys, insurers, all employee benefit and compensation plans or arrangements, including, without limitation, related fiduciaries and administrators, representatives, successors and/or assigns.

For purposes of this Agreement, "Barnett Released Parties" includes, Personal Representatives of the Estate of John M. Barnett, including without limitation, each of their heirs, principals, affiliates, successors assigns, agents, and representatives. Attorneys for the Estate are expressly excluded from the definition of "Barnett Released Parties."

2. **Settlement Payment**. In consideration for the Barnett Estate's agreement to all of the terms, conditions and promises in this Agreement, including without limitation the Barnett Estate's general release of all known and unknown claims against the Company and dismissal of the pending Federal Lawsuit with prejudice, the Company agrees to pay to the Barnett Estate the gross total sum of Fifty Thousand Dollars ($50,000.00) (the "Settlement Payment").

The Company will provide the Settlement Payment within thirty (30) calendar days from the date on which the Company's counsel has received all of the following: (i) a copy of this Agreement signed by each Independent Co-Administrator of the Barnett Estate; (ii) complete necessary IRS Forms from the Barnett Estate and each of its counsel; (iii) the issuance of the District Court Judge's Order granting the Petition for Approval of Settlement in the Federal Lawsuit; and (v) filing of the Stipulation of Dismissal with Prejudice pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure in the Federal Lawsuit. The Parties agree that the Company shall be obligated to issue the Settlement Payment only upon receipt of the all of the foregoing.

3. **No Consideration Absent Execution of this Agreement.** The Barnett Estate acknowledges and agrees that neither John Barnett nor the Barnett Estate has any right to the Settlement Payment and, in order to receive the same, the Barnett Estate must execute this Agreement, take any and all necessary actions to dismiss with prejudice and without an award of attorneys' fees or costs the Federal Lawsuit on the terms set forth in this Agreement. The Barnett Estate acknowledges and agrees that it is not eligible to receive any additional payment or consideration from the Company other than as set forth in this Agreement.

4. **Waiver and General Release of Claims.** In consideration of the Settlement Payment and other valuable consideration provided herein, the Barnett Estate does hereby, for itself, its heirs and estate representatives, fully waive and release the Company and the Company Released Parties, individually and collectively, from any and all known and unknown claims and/or causes of action of any kind the Barnett Estate now has, owns, or holds, or claims to have, own, or hold, or which the Barnett Estate or John Barnett at any time heretofore had, owned, or held, or claimed to have, owned, or held, against the Company and/or the Company Released Parties, collectively or individually, whether known now or of which the Barnett Estate may later learn, from the beginning of time through the Effective Date of this Agreement. The claims and causes of action the Barnett Estate is waiving and releasing against the Company and the Company Released Parties include, without limitation:

a. All claims raised by the Barnett Estate in the Federal Lawsuit;

b. Any other claim or cause of action in law or equity for damages, attorneys' fees, costs, equitable relief, restitution, punitive and/or liquidated damages, or any other kind of remedy, including without limitation, claims or causes of action for breach of contract; and tort and/or common law claims or causes of action including without limitation claims or causes of action for wrongful death, abuse of process, negligence, retaliatory and/or wrongful discharge, discrimination, harassment, hostile work environment, retaliation, negligent or intentional infliction of emotional distress, tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, invasion of privacy, promissory estoppel or breach of an express or implied promise, detrimental reliance, equitable estoppel, misrepresentation, fraud, libel, slander, defamation, assault, battery, or any other tort; and

c. To the extent permitted by applicable law, any claim or cause of action relating to the payment of wages, salary, compensation, or penalties under any local, state, or federal law, statute, regulation, or ordinance, including any claims under: the Federal Fair Labor Standards Act; the Equal Pay Act; and the common law of South Carolina; or any other local, state, federal or other law governing the payment of salary, wages, overtime pay, bonuses, commissions, incentive compensation, business expense reimbursement, overtime pay, minimum wages, and meal and rest periods, final wages, off-the-clock work, paid time off, or wage statements (collectively "Wages") that may be legally waived and released pursuant to applicable law. By accepting this Agreement, the Barnett Estate acknowledges that the Company disputes any claim the Barnett Estate may have for Wages, whether known or unknown. The Barnett Estate does not contend that the Company's dispute is anything other than a bona fide (meaning a genuine and good faith) dispute, and the parties have agreed to settle and include such claims within the scope of this release and Agreement to the maximum extent permitted by applicable law; and

d. Any claim or cause of action that the Company and/or any Released Party is obligated for any reason to pay the Barnett Estate any damages, expenses, litigation costs, attorneys' fees, wages, bonuses, severance pay, separation pay, termination pay, any type of payments or benefits based on John Barnett's separation from employment, incentive pay, disability or any other benefits, sick pay, compensatory damages, punitive and/or liquidated damages, and/or interest.

This release by the Barnett Estate does not cover any claim or right it cannot waive as a matter of law, including, without limitation, claims against the Company for breach of its obligations under this Agreement, and any claims that might arise after the Effective Date. Notwithstanding the foregoing release of claims, nothing in this Agreement limits the Barnett Estate's right to receive a whistleblower award (including a monetary whistleblower award) from a Government Agency for information provided to any Government Agency, including but not limited to the SEC and/or DOJ. However, to the fullest extent permissible under applicable law, Plaintiff waives and releases Plaintiff's personal right in any Government Agency proceeding, or in an action brought by a Government Agency, to recover monetary damages or remedies from the Company and/or any Company Released Party for claims released in this Agreement, including but not limited to, front pay, back pay, damages or interest.

In consideration of the Settlement Agreement, the Company fully waives and releases the Barnett Released Parties from any claims the Company might have against the Barnett Released Parties whether known now or of which the Company may later learn, based on any action or inaction of the Barnett Released Parties from the beginning of time through April 11, 2025.

5. **Dismissal of the Federal Lawsuit With Prejudice.** For the valuable consideration described in Section 2, the Barnett Estate agrees to file a Stipulation of Dismissal with Prejudice for the Federal Lawsuit with the United States District Court for the District of South Carolina pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.

6. **Comments to Third Parties.** The Barnett Estate agrees that it, its agents, and attorneys may not individually, collectively, or through any person or entity, knowingly, intentionally, or maliciously make or publish any verbal or written statements (whether online or through any social media, electronic, print or digital communications, television, or streaming platform) to any media outlet or third party other than spouses or children, which are false or defamatory, or which are made with reckless indifference for their truth or falsity or which are maliciously intended to damage the reputation of the Company and/or any Released Party, specifically or generally. For the avoidance of doubt, the parties agree that describing what John Barnett alleged or what is alleged in the Federal Lawsuit does not violate this provision, provided any such statement clearly indicates it is only reporting the allegations made in the Federal Lawsuit. The Parties further agree that this provision does not apply to any statements or republications of statements that the Barnett Estate or its attorneys made prior to April 11, 2025, even if such statements are publicly reported after the Effective Date of this Agreement.

The Company agrees to instruct any currently employed managers who supervised John Barentt not to knowingly, intentionally or maliciously make or publish any verbal or written statements (whether online or through any social media, electronic, print or digital communications, television, or streaming platform) to any media outlet or third party other, which are false or defamatory related to John Barnett and/or any Barnett Released Party, specifically or generally.

7. **No Admissions.** The Parties agree that entering into this Agreement and their negotiations regarding this Agreement shall not be deemed, construed, or ever argued or communicated to anyone as an admission of wrongdoing, fault, liability, or as the truth of any claim, cause of action, or alleged fact relating to the subject matter and terms of this Agreement. The Company and each Released Party expressly denies any wrongdoing, fault, or liability with respect to John Barnett and/or the Barnett Estate. Neither the existence of this Agreement, nor any recitals, terms, conditions or other statements contained herein, nor the payment of the Settlement Payment or any portion thereof, shall be construed as an admission of liability by or on behalf of the Company and/or any Company Released Party.

8. **Tax Consequences.** The Barnett Estate agrees and acknowledges that neither the Company, nor its attorneys, have made any representations regarding the tax consequences of any funds received pursuant to this Agreement, and the Barnett Estate agrees to pay any federal or state taxes that it may be required by law to be paid with respect to this Agreement.

**9. No Medical Expenses Have Been Paid by Medicare.** The Barnett Estate is not aware of any medical expenses which Medicare has paid for John Barnett or for which the Company and/or any Released Party, collectively or individually, are or could be liable now or in the future. The Barnett Estate agrees and affirms that, to the best of their knowledge, no liens of any governmental entities, including those for Medicare conditional payments, exist for medical expenses for which the Company and/or any Released Party, collectively or individually, could be liable.

This settlement is based upon a good faith resolution of a disputed claim. The Parties have not shifted responsibility for medical treatment to Medicare in contravention of 42 U.S.C. § 1395y(b). The parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms, and to comply with both federal and state law. The parties acknowledge and understand that any present or future action or decision by the Centers for Medicare & Medicaid Services or Medicare on this settlement, or John Barnett's eligibility or entitlement to Medicare or Medicare payments, will not render this release void or ineffective, or in any way affect the finality of this settlement. The Barnett Estate agrees to waive any and all private causes of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A) *et seq.*

The Barnett Estate agrees to hold the Company harmless from any and all claims which have been made or may hereinafter be made by any private insurance company or by any branch of the U.S. or SC government by way of subrogation or otherwise, for medical, drug, hospital or other services afforded the Barnett Estate in connection with the Federal Lawsuit.

**10. Representations and Warranties.** The Barnett Estate represents and warrants that it is the sole and exclusive owner of the claims and/or causes of action subject to this Agreement and that it has not transferred, assigned, allocated and/or conveyed any of the claims released herein, nor any portion thereof, to any third party.

The Barnett Estate further represents and warrants that each of Vicky A. Stokes, Rodney L. Barnett, and Michael Barnett have been duly appointed as executors/executrix of the Estate of John Barnett and/or as Independent Co-Administrators of the Succession of the late John Barnett and that each of Vicky A. Stokes, Rodney L. Barnett, and Michael Barnett have full, complete, and total authority to bind the Barnett Estate to this Agreement.

This Agreement shall be binding on all the Parties' successors in interest, heirs, purchasers, and assignees.

**11. Knowing and Voluntary Acceptance.** The Barnett Estate has read this Agreement, and understands its terms, including the fact it hereby releases the Company from the pending Federal Lawsuit and agrees to its complete dismissal with prejudice. The Barnett Estate acknowledges that it has not relied on any statement or promise that is not written in this Agreement. The Barnett Estate enters into this Agreement voluntarily and was not coerced into signing it; the Barnett Estate agrees to all the Agreement's terms and significance, knowingly, deliberately, without duress or reservation of any kind, and after having given the matter full and careful consideration. The Barnett Estate understands it is not waiving any rights or claims that may arise after the Effective Date of this Agreement, and the Barnett Estate is executing this

Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which the Barnett Estate is otherwise entitled. The Barnett Estate was advised in writing, through this Agreement, to consult with an attorney of its choice about this Agreement, and the Barnett Estate has in fact thoroughly consulted with and been advised by its counsel.

12. **Enforcement.** Any Party or Released Party may enforce this Agreement in court if another Party breaches it, but all Parties irrevocably and unconditionally waive the right to a trial by jury in any action or proceeding seeking to enforce or alleging a breach of any provision of this Agreement. If such an action is necessary to enforce or remedy a breach of this Agreement, the non-breaching Party shall be entitled to its reasonable attorneys' fees and costs in the action.

This Agreement and the Settlement Payment shall not be admissible for any purpose pursuant to Rule 408 of the Federal Rules of Evidence (or its state counterparts) other than for purposes of enforcing the terms of this Agreement. While the Parties are entering into this Agreement in good faith and do not anticipate that any subsequent action to enforce this Agreement will become necessary, should any Party initiate any action to enforce the terms of this Agreement, neither this Agreement nor any portion thereof shall be excerpted, quoted, or attached as an exhibit in any publicly available filing.

13. **Construction and Interpretation.** This Agreement constitutes the entire agreement between the Parties. Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary, or contradict its terms. In entering into this Agreement, the Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence. The language and all parts of this Agreement shall be construed as a whole and according to its fair meaning, and not strictly for or against any Party as all Parties were represented by counsel. It is expressly understood and agreed that any rule requiring construction of this Agreement against the drafter will not apply. Additionally, section headings in this Agreement are for convenience of reference only and shall not affect the meaning of any provision in this Agreement.

The covenants, agreements, and provisions contained in this Agreement are of the essence. Each provision of this Agreement is reasonable and necessary to protect and preserve the interests of the Parties; and each provision of this Agreement is separate, distinct, and severable not only from the other of such provisions but also from the other and remaining provisions of this Agreement as provided in Section 18.

14. **Modification of Agreement.** This Agreement may not be changed orally, but only by an agreement, in writing and signed by all Parties or their respective heirs, legal representatives, successors and/or assigns.

15. **Choice of Law; Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of South Carolina, and the parties agree that any dispute arising out of this Agreement shall be heard by a court of competent jurisdiction located in Charleston County, South Carolina.

**16. Third Party Beneficiaries.** The Company Released Parties and Barnett Released Parties who are not signatories to this Agreement are each an intended beneficiary of this Agreement and entitled to enforce this Agreement as though a party hereto.

**17. Severability.** Should any provision in this Agreement be declared or determined by any court of competent jurisdiction to be unenforceable under present or future laws, with the exception of the release provisions, such provision shall be severable, and this Agreement shall be construed and enforced as if such unenforceable provision had never been part of this Agreement. In addition, the remaining provisions of this Agreement shall continue in full force and effect and shall not be affected by the unenforceable provision or by its severance from this Agreement.

**18. Notices.** Wherever in this Agreement it is required or permitted that notice be given by either party to or on the other, such notice shall be provided by (i) personal service in compliance with Rule 4 of the Federal Rules of Civil Procedure; (ii) registered or certified mail postage prepaid or equivalent of such; (iii) by a nationally recognized overnight courier such as UPS or FedEx with tracking; or (iv) sent by electronic mail with delivery receipt requested, in each case, to:

If to the Barnett Estate:

Robert M. Turkewitz
Law Office of Robert M. Turkewitz, LLC
St. Andrews Law Center
768 St. Andrews Blvd.
Charleston, SC 29407
rob@rmtlegal.com

If to the Company:

Robert Brown
Senior Counsel – Labor & Employment
The Boeing Company
MC7830-SW81
5400 International Boulevard
North Charleston, SC 29418-6938
robert.r.brown@boeing.com

Such notice addresses may be changed from time to time by either party by serving notice of such change, as above provided. If service of any notice of change is effected by registered or certified mail, delivery shall be deemed to have occurred on two (2) business days after the mailing; if personally served or delivered by a nationally recognized courier with a tracking number delivery shall be deemed to have occurred on the date of delivery; and if delivery is made vie electronic mail with delivery receipt delivery shall be deemed to have occurred on the date of delivery as reflected in the delivery receipt. Rejection or failure to claim delivery of any such notices, requests, consents and other communications hereunder, or any refusal to accept such notices, requests, consents and other communications hereunder, or the inability to deliver any such notices, requests, consents and other communications hereunder because of changed address of which no notice was given, shall be deemed to be receipt of the notice, request, consent and other communication hereunder, sent as of the date of attempted delivery.

21. **Counterparts.** This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. Electronic signatures to this Agreement and signatures of this Agreement that are transmitted by electronic mail, facsimile or similar means are valid.

The Barnett Estate and the Company have read the Agreement, fully understand the Agreement, and voluntarily accept and agree to the terms and conditions of the Agreement as binding upon them for any and all purposes whatsoever.

IN WITNESS WHEREOF, the Parties knowingly and voluntarily executed this Settlement Agreement and General Release as of the date set forth below.

Vicky A. Stokes

**Vicky A. Stokes**
Individually and on behalf of the Estate of John Barnett as an Independent Co-Administrator

Date: 12/8/2025

Rodney L. Barnett

**Rodney L. Barnett**
Individually and on behalf of the Estate of John Barnett as an Independent Co-Administrator

Date: 12/8/2025

Michael Barnett

**Michael Barnett**
Individually and on behalf of the Estate of John Barnett as an Independent Co-Administrator

Date: 12/8/2025

______________________

**Robert Brown**
Senior Corporate Counsel – Labor & Employment, The Boeing Company

Date: ______________________

21. **Counterparts.** This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. Electronic signatures to this Agreement and signatures of this Agreement that are transmitted by electronic mail, facsimile or similar means are valid.

The Barnett Estate and the Company have read the Agreement, fully understand the Agreement, and voluntarily accept and agree to the terms and conditions of the Agreement as binding upon them for any and all purposes whatsoever.

IN WITNESS WHEREOF, the Parties knowingly and voluntarily executed this Settlement Agreement and General Release as of the date set forth below.

| | |
|---|---|
| ______________________ | Robert R Brown (signature) |
| **Vicky A. Stokes**<br>Individually and on behalf of the Estate of John Barnett as an Independent Co-Administrator | **Robert Brown**<br>Senior Corporate Counsel – Labor & Employment, The Boeing Company |
| Date: ______________________ | Date: 12/11/2025 |

______________________

**Rodney L. Barnett**
Individually and on behalf of the Estate of John Barnett as an Independent Co-Administrator

Date: ______________________

______________________

**Michael Barnett**
Individually and on behalf of the Estate of John Barnett as an Independent Co-Administrator

Date: ______________________